Argued and submitted November 28, 1994, affirmed January 25, petition for review denied May 16, 1995 (321 Or 137)

# STATE OF OREGON,
*Respondent,*

*v.*

# JULIE LEE BARNETT,
*Appellant.*

(CR 93-086; CA A81781)

888 P2d 1064

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Richardson, Chief Judge,* and De Muniz and Leeson, Judges.

LEESON, J.

---

* Richardson, C. J., *vice* Rossman, P. J., retired.

## LEESON, J.

Defendant was convicted by a jury of possession of a controlled substance. ORS 475.992(4). She assigns error to the trial court's denial of her motion to suppress evidence obtained when police officers searched her during execution of a valid search warrant for a residence in which she was a visitor. We affirm.

Defendant was a visitor at the Cosgrove residence when police executed a search warrant for controlled substances. Defendant was not named in the warrant. Probable cause for the warrant was based on information from two named informants. They told Deputy Eiesland that Cosgrove was a frequent user of methamphetamine, was "paranoid," and had threatened one of the informants with "bodily harm" a week earlier. Although not included in the warrant affidavit, one informant also reported that Cosgrove kept firearms in the house, including a handgun in the living room, and that he thought Cosgrove would use the guns.

At a meeting just before the warrant was executed, the seven officers involved discussed safety concerns because they believed that Cosgrove might be armed and that guns were "readily available" in several locations inside the house. When they executed the warrant at the Cosgrove residence, the four officers who entered moved swiftly after they knocked and announced at the open door. Within 15 seconds, they had Cosgrove, his wife and defendant face down on the living room floor, their hands handcuffed behind their backs. Eiesland then assisted defendant to her feet and patted down her clothing. She was wearing a loose-fitting coat with inside pockets. Eiesland felt a hard metal object about six inches long by three inches wide, which he described as "consistent with a weapon," concealed in one of the pockets.[1] He reached into the pocket and removed a scale. Methamphetamine residue was found on the tray.

---

[1] Eiesland asked defendant about the object before reaching into her pocket to remove it. She responded that it was "a scale." Defendant also moved to suppress evidence of her statement as an improper admission made without benefit of a *Miranda* warning. However, the state did not offer the statement as evidence during trial. Defendant also argues that evidence of the scale should be suppressed under ORS 133.683 as "tainted," because Eiesland would not have removed the object had she not made the statement. That argument is without merit.

Defendant assigns error to the denial of her pre-trial motion to suppress admission of the scale into evidence. The legality of a search and seizure turns largely on the facts in each case; we are bound by the trial court's findings of historical fact if they are supported by the record and review for errors of law. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993).

■■ Defendant first argues that the officers were not authorized to arrest her and that suppression is required because the evidence was the fruit of an unlawful arrest. She contends that when the officers placed her face down on the floor and handcuffed her, she was under arrest. We need not decide whether defendant was under "arrest," ORS 133.005(1), or was merely "stopped," ORS 131.605(5), because ORS 133.605, which governs the use of force by police during execution of a warrant, provides independent authority for officers to control persons present to the extent necessary to execute the warrant with all practicable safety.[2] *State v. Cawrse*, 105 Or App 325, 327-28, 804 P2d 513, *rev den* 311 Or 482 (1991). The proper inquiry is whether handcuffing and frisking defendant was reasonable under the circumstances. *See State v. Johnson*, 120 Or App 151, 851 P2d 1160, *rev den* 318 Or 26 (1993); *State v. Morgan*, 106 Or App 138, 806 P2d 713, *rev den* 312 Or 235 (1991). Defendant argues that the officers' actions were unreasonable and, therefore, violated her rights under Article I, section 9, of the Oregon Constitution.[3] We disagree.

In *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), the Supreme Court held that

"Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a

---

[2] ORS 133.605(1) provides:

"The executing officer and other officers accompanying and assisting the officer may use the *degree of force*, short of deadly physical force, against persons, or to effect an entry, or to open containers, as is *reasonably necessary* for the execution of the search warrant with *all practicable safety*." (Emphasis supplied.)

[3] Article I, section 9, of the Oregon Constitution, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

Although *Bates* involved a search incident to a lawful traffic stop, the rationale for the "officer safety" exception discussed there is applicable here. *Cf. State v. Hoskinson*, 320 Or 83, 91 n 3, 879 P2d 180 (1994) (applying "officer safety" exception to search incident to arrest). Our focus is on the reasonableness of the officers' actions in "the circumstances as they reasonably appeared at the time" they were taken. *State v. Bates, supra*, 304 Or at 525.

■ There is no dispute about the validity of the warrant to search the Cosgroves and their residence. The informants provided the officers with probable cause to believe that Cosgrove was armed and dangerous and that guns were readily available in the living room of the house. It was not unreasonable for the officers to fear that, in the confined space of the Cosgroves' living room, the putative weapons would be readily accessible to any occupant, including a visitor. Consequently, the officers acted swiftly and decisively to minimize the danger by handcuffing defendant, as well as the Cosgroves, before conducting the search. As stated in *Bates*:

"[I]t is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations." 304 Or at 524.

■ On these facts, it was not unreasonable for the officers to fear that all occupants, including defendant, might pose a threat to their safety. Although handcuffing defendant is a seizure under Article I, section 9, a police officer's right to reasonable self protection and protection of others while performing the job outweighs an individual's right to be free from restraint. *State v. Johnson, supra*, 120 Or App at 161. In these circumstances, handcuffing defendant was a permissible seizure justified as a reasonable safety measure.

■ Defendant next argues that once she was handcuffed it was unnecessary for the officers to frisk her, because she no longer posed a threat to their safety. That argument presupposes that the officers intended to arrest her rather than merely to restrain her temporarily for their safety. For the reasons discussed above, it was reasonable for officers to frisk defendant. Subsequent seizure of the scale pursuant to that search was lawful. ORS 131.625.

Finally, defendant argues that the officers' conduct violated her right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution.[4] With regard to officer safety, the United States Supreme Court has authorized searches and seizures where, based on specific and articulable facts, officers have a reasonable belief that a suspect is dangerous and is armed or may gain immediate control of weapons. *Michigan v. Long*, 463 US 1032, 1049, 103 S Ct 3469, 77 L Ed 2d 1201 (1983); *Ybarra v. Illinois*, 444 US 85, 92-93, 100 S Ct 338, 62 L Ed 2d 238 (1979); *see also Michigan v. Summers*, 452 US 692, 101 S Ct 2587, 69 L Ed 2d 340 (1981). Oregon cases interpreting the officer safety exception under Article I, section 9, rely on the United States Supreme Court's interpretation of the Fourth Amendment. *See, e.g., State v. Bates, supra; State v. Ehly, supra.* For the reasons explained in our analysis under Article I, section 9, we conclude that on these facts, defendant's search and seizure was justified under the Fourth Amendment as well.

Affirmed.

---

[4] The Fourth Amendment to the United States Constitution provides, in part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"