Argued and submitted April 22, 1999, affirmed March 15, 2000

# STATE OF OREGON,
*Appellant,*

*v.*

# GENE ARLAND MIEARS,
*Respondent.*

# (CF 97-415; CA A101604)

999 P2d 493

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Walter J. Ledesma, Deputy Public Defender, argued the cause for respondent. With him on the brief was David E. Groom, Public Defender.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* Warren, S. J.

## WOLLHEIM, J.

Defendant is charged with unlawful possession of a Schedule II controlled substance, ORS 475.992(4)(b), unlawful possession of a Schedule I controlled substance, ORS 475.992(4)(f), theft in the third degree, ORS 164.043, and giving false information to a police officer, ORS 162.385. The state appeals from an order granting defendant's motion to suppress all evidence found after the police officer stopped defendant. We affirm.

When we review the legality of searches and seizures, this court is bound by the trial court's findings of historical facts if they are supported by the record. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Where the trial court does not make express factual findings, we presume that the trial court implicitly made findings that are consistent with its legal disposition. *State v. Long*, 320 Or 361, 370, 885 P2d 696 (1994), *cert den* 514 US 1087 (1995). Our role is to decide independently whether the trial court applied the correct legal principles to those facts. ORS 138.220; *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

At the hearing on defendant's motion to suppress, a Hermiston police officer was the sole person to testify. The officer responded to a shoplifting complaint at a convenience store. There, the officer saw a videotape that showed a person, who the officer knew to be defendant, and who had apparently shoplifted an item from the store. The officer looked for defendant and found him behind a nearby residence in a shed frequented by transients. As the officer approached the shed, the officer saw defendant and another person through an open door. The officer remained outside the shed and requested that the two persons come outside. After about one minute, the two complied.

As the two walked out of the shed, the officer perceived that defendant was "palming something" in his hand, thereby hiding an object from the officer's view. Because defendant and the other person had, on previous occasions, been stopped while carrying weapons, the officer was concerned for his safety. The officer directed both men towards

his patrol car and asked them to put their hands on the vehicle's hood so he could perform an officer-safety pat-down frisk. After frisking the other person, the officer handcuffed defendant and frisked him. During the frisk the officer felt and removed two packs of cigarettes from defendant's jacket or shirt pocket. The officer stated that he could tell from the frisk that these were packs of cigarettes in defendant's pockets. In the clear outer casing of one of the cigarette packs, the officer noticed a paper bindle that was later determined to contain methamphetamine. A search of defendant also produced a marijuana pipe and other miscellaneous items. The officer found no object in defendant's hand.

Defendant was taken to the police station on a charge of theft in the third degree. ORS 164.043. At the station, the officer discovered an outstanding arrest warrant for defendant. Defendant was then arrested on the warrant. Before trial, defendant filed a motion to suppress, seeking suppression of the evidence obtained by the officer as a result of the warrantless search and seizure. After a hearing, the court granted defendant's motion.

■ On appeal, the state assigns as error the trial court's order granting defendant's motion to suppress. The state first argues that the officer lawfully contacted, detained, and searched defendant. In particular, the state argues that the pat-down frisk was a reasonable officer-safety precaution given the circumstances surrounding the encounter with defendant. Second, the state argues that we should overrule *State v. Taylor*, 151 Or App 687, 950 P2d 930 (1997), *rev den* 327 Or 432 (1998). In *Taylor*, we held that the discovery of an outstanding arrest warrant for a defendant cannot retroactively validate an unlawful search. *Id.* at 692. Here, *Taylor* rendered the arrest warrant legally irrelevant as to whether the search was lawful because the officer did not discover the warrant until after the search of defendant. Defendant replies that the trial court correctly suppressed the evidence and makes multiple arguments challenging the lawfulness of the contact, the detention, and the search. The defendant also argues that *Taylor* was properly decided and should not be overruled.

Because resolution of the state's *Taylor* argument could obviate the need to address the search issue, we address it first. The state argues that *Taylor* was wrongly decided in light of earlier decisions. *See, e.g., State v. Dempster*, 248 Or 404, 434 P2d 746 (1967) (even if defendant's initial detention was unlawful, the arrest of defendant at the police station after discovery of an outstanding bench warrant for defendant was lawful and the search of defendant thereafter was also lawful); *State v. Snyder*, 72 Or App 359, 695 P2d 958, *rev den* 299 Or 251 (1985) (police officer's discovery of an outstanding arrest warrant for defendant, and subsequent arrest thereunder, purged illegality of prior stop). The state contends that the cases it cites lead to the proposition that the discovery of an arrest warrant can purge any prior illegality that may lead to the suppression of evidence. Furthermore, the state reasons that, because *Taylor* holds otherwise, it was incorrectly decided. That argument is not well taken. Faced with distinguishing the same line of cases as cited by the state here, we explained in *Taylor* that:

> "In all of the cases cited by the state, the search at issue was conducted *after* the discovery of an outstanding warrant and the arrest of the defendant pursuant to that warrant. Therefore, even though the defendants in those cases had been unlawfully stopped or questioned, the searches at issue had been conducted as lawful searches incident to arrest. Here, the search took place *before* [the officer] had any reason to believe that he had cause to arrest defendant. It was not a search incident to a lawful arrest but, rather, an unlawful search that preceded a lawful arrest." 151 Or App at 692 (emphasis in original).

Whether a search was conducted before or after the discovery of an outstanding warrant is significant. Our reasoning in *Taylor* is sound, and we see no reason to overrule the decision. Evidence that is unlawfully seized before discovery of an outstanding arrest warrant must be suppressed. That holding does not overrule prior holdings that discovery of an outstanding warrant can retroactively validate an unlawful stop. In the case before us, because the search and seizure were conducted before discovery of the outstanding warrant, that warrant cannot retroactively validate an otherwise unlawful search.

■    We address the lawfulness of the search because it is dispositive. To address that issue first, we assume—and we do so without deciding—the following: (1) The officer did not invade defendant's curtilage when the officer approached the shed; (2) the officer did not order, but rather requested, that defendant come out of the shed; (3) the officer did not unlawfully arrest defendant when he directed defendant to the patrol car and eventually handcuffed him;[1] and (4) the officer was concerned about his safety. Even if we assume all of the above in favor of the state, the seized evidence is not admissible. The state did not proffer any evidence indicating that the officer had a reasonable officer-safety justification for pulling the cigarette packs and pipe out of defendant's pockets.[2] Therefore, the trial court properly suppressed the evidence gained from that search.

■    Warrantless searches of a person are *per se* unreasonable unless the search falls within one of the established and well-delineated exceptions to the warrant requirement. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). One exception to the warrant requirement is a frisk conducted in conjunction with a stop when the frisk is for officer-safety purposes. *See id.* at 241 ("This power to search without a warrant and without arrest stems solely from the need of the officer to protect himself * * * from harm during the permissible investigation."). When a search is challenged, it is the state's burden to prove, by a preponderance of the evidence, that the police conduct was within the umbrella of exceptions to the warrant requirement. *State v. Paulson*, 313 Or 346, 351-52, 833 P2d 1278 (1992).

A police officer who reasonably suspects that a person has committed a crime may stop that person and, upon informing the person that the officer is a peace officer, conduct a reasonable inquiry. ORS 131.615(1). During the stop, an officer may frisk the person if the officer reasonably suspects that the person is armed and dangerous to the officer or

---

[1] *But see* ORS 133.310(1)(i) (officer may arrest without warrant for Class C misdemeanors such as theft III only if committed in the officer's presence).

[2] At trial and on appeal, the state argued the lawfulness of the frisk solely on officer-safety grounds. The state expressly acknowledged that the search was not incident to an arrest.

others present. ORS 131.625(1). "Frisk" is defined as "an external patting of a person's outer clothing." ORS 131.605(3). While conducting the frisk, if the officer feels an object that the officer reasonably suspects is a dangerous or deadly weapon, then the officer may take reasonably necessary action to take possession of the weapon. ORS 131.625(2). *See State v. Rickard*, 150 Or App 517, 524, 947 P2d 215, *rev den* 326 Or 234 (1997) (describing frisk process).

"Reasonably suspects" means that the police officer holds a belief "that is reasonable under the totality of the circumstances existing at the time and place" the officer acts. ORS 131.605(5). *Ehly*, 317 Or at 80. We have held that an officer must hold a subjective belief that what the officer feels is a weapon and must also state specific articulable facts to support an objective reasonable suspicion that the object is a dangerous or deadly weapon. *State v. Kurtz*, 46 Or App 617, 620-21, 612 P2d 749, *rev den* 289 Or 588 (1980). We have held that these same principles apply in instances where an officer, during the course of a frisk, seizes an item that the officer believes contains a dangerous or deadly weapon. *State v. Lumpkin*, 133 Or App 265, 269, 891 P2d 660, *rev den* 321 Or 138 (1995). The crucial questions here become whether the officer had a reasonable suspicion that what he felt was a weapon, or contained a weapon, before he removed it from defendant's pocket and whether the state met its burden of proof to demonstrate reasonable suspicion with evidence articulating the basis of that suspicion.

The officer who testified at the suppression hearing did not state that he believed that the objects he felt in defendant's pockets were weapons or possibly contained weapons. The facts here are unlike those in *State v. Barnett*, 132 Or App 520, 522, 888 P2d 1064, *rev den* 321 Or 137 (1995), where the officer described feeling "a hard metal object about six inches long by three inches wide" that felt like a weapon but, instead, was a scale with residual methamphetamine on a tray. There, the officer described the object as "consistent with a weapon" and the evidence was properly admitted. *Id.* The facts here are more like *State v. Boyd*, 101 Or App 649, 792 P2d 462 (1990). There, an officer conducted a frisk and felt a round metal snuff box in the defendant's shirt pocket.

The officer perceived it to be a snuff box, and because the officer did not suspect that it was a weapon, or that it contained a weapon, she had no legitimate reason for removing the object from the defendant's pocket or to search the defendant's pockets further. The evidence obtained during that frisk was suppressed. *Id.* at 653. Here, the officer did not state that he believed the cigarette packs were anything other than cigarette packs, and he did not articulate any facts that support an objectively reasonable suspicion that the packs were, or contained, dangerous or deadly weapons. The officer similarly did not testify that he believed that the marijuana pipe was a weapon when he felt it during the frisk. Because the officer did not, or could not, offer an officer-safety rationale why removal of the evidence from defendant's pockets was reasonable given the totality of the circumstances existing at the time and place of the frisk, the warrantless seizure of these items was unreasonable. *Ehly*, 317 Or at 82-83. Therefore, the evidence obtained during the frisk was unlawfully seized and the trial court properly granted defendant's motion to suppress.

The state argues that, because the scope of the frisk was not specifically raised at the hearing, that issue was not developed through the officer's testimony even though it could have been. Therefore, the state reasons, we should not consider the scope issue for the first time on appeal. That argument ignores the fact that the state bears the burden of proof, by a preponderance of the evidence, to demonstrate that a warrantless search is otherwise lawful. It is not our intention uncharitably to second-guess the officer's judgment in this situation. We allow police officers in the field considerable latitude in taking precautions to ensure their safety, and we are reluctant to second-guess the officer-safety decisions they make. *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). That latitude, however, is not *carte blanche*—there are limits to what officers can do under the justification of protecting their safety. *State v. Austin*, 145 Or App 217, 224, 929 P2d 1022 (1996), *rev den* 325 Or 368 (1997). It was the state's burden to justify the scope of the frisk at the hearing. In order to meet its burden of proof, the state must submit at least some evidence that the officer had a safety-based reason to remove items from defendant's pockets. Here, the state did

not meet that burden because it did not submit *any* evidence that the officer reasonably suspected that what he felt in defendant's pockets were weapons or contained weapons. The evidence was properly suppressed. The trial court's order is affirmed.

Affirmed.