Submitted August 27, reversed and remanded December 2, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ADAM CHRISTOPHER AMSBARY,
*Defendant-Appellant.*

Coos County Circuit Court
13CR0824; A155870

364 P3d 21

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Garrett, Judge, and Schuman, Senior Judge.

LAGESEN, P. J.

**LAGESEN, P. J.**

Defendant conditionally pleaded guilty to one count of unlawful possession of methamphetamine, ORS 475.894, reserving the right to appeal the trial court's denial of his motion to suppress the evidence that he possessed the drug. On appeal, defendant argues that the trial court erred when it determined that the investigating officer's warrantless seizure of the black nylon pouch containing the methamphetamine was justified by the "officer safety" exception to the warrant requirement of Article I, section 9, of the Oregon Constitution and that, as a result, defendant was not entitled to suppression of the evidence of the pouch's contents. We review to determine whether the trial court's factual findings are supported by any evidence in the record, and whether the trial court correctly applied applicable principles of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and reverse and remand.

Consistent with our standard of review, we draw our statement of historical facts from the trial court's explicit findings, to the extent the evidence in the record supports those findings. To the extent that the trial court did not make express findings, on a particular point, we state the facts in a manner consistent with the trial court's ultimate conclusion, so long as the record supports that view of the facts. *State v. Regnier*, 229 Or App 525, 527, 212 P3d 1269, 1271 (2009) (citing *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968)).

Officer Rule stopped defendant for driving his van with a taillight out. Alerted of the stop, Officer Bennett arrived to provide cover for Rule during the stop. Looking through the passenger window, Bennett observed something between defendant's legs that appeared to be attached to a string or lanyard. The string was draped over defendant's right leg, and defendant was holding the string in his hand. Bennett told Rule about the object on the string.

Rule, who was at the driver's side window speaking with defendant, became concerned that the object on the string might be a weapon. Rule had previously stopped defendant. During that stop, defendant had been in possession of a

slungshot-type[1] weapon constructed of a fixed-blade knife on a rope. In the light of that fact, Rule thought that the object on the string between defendant's legs might be a slungshot-type weapon. Rule asked defendant to show the object to him. Rather than do so, defendant dropped the object on the floor of the van. Still thinking that the object might be a weapon, Rule then asked defendant what the object was. Defendant responded, "It's not good." Rule still thought that the object might be a weapon and again asked defendant to show it to him. Defendant did so; the object turned out to be a small black nylon pouch, or bag, that was cinched closed by the string in defendant's hands.

After seeing the pouch, Rule did not know what it contained. He grabbed one of its strings and asked defendant if defendant would mind if Rule searched the pouch. Defendant responded, "I kind of do." At that point, Rule read defendant the *Miranda* warnings and then inquired whether the pouch contained a "little green dope."[2] Defendant said, "No." Rule asked if the pouch contained a "little white dope." Defendant hung his head and said, "Yes." Based on defendant's admission that the pouch contained a "little white dope," Rule determined that he had probable cause to search the pouch for controlled substances. He then took the pouch to his patrol car, where he opened it to discover a white substance. That substance was methamphetamine, according to lab tests performed later.

Defendant was charged with one count of unlawful possession of methamphetamine, in violation of ORS 475.894. He moved to suppress the evidence obtained during the traffic stop, asserting a variety of theories as to why that evidence should be suppressed. Among other things, defendant asserted that Rule unlawfully seized the pouch

---

[1] A slungshot typically is "a weapon consisting of a small mass of metal or stone fixed on a flexible handle or strap." *Webster's Third New Int'l Dictionary* 2148 (unabridged ed 2002).

[2] In its express findings, the trial court found that Rule read defendant the *Miranda* warnings before Rule asked defendant to show him the object that defendant had dropped on the floor of the van. However, the uncontroverted testimony from Rule at the hearing on the motion to suppress was that Rule had read defendant the *Miranda* warnings after defendant had declined to grant consent to search the pouch.

without a warrant in violation of Article I, section 9, when he grabbed the pouch's string, and that that seizure was not justified under any exception to the warrant requirement. In response, the state did not dispute that Rule had seized the pouch when he grabbed its string but argued that the seizure was justified by the "officer safety" exception to the warrant requirement under Article I, section 9. After requesting supplemental briefing on whether Rule had effected a seizure by grabbing the pouch's string, and whether Article I, section 9, permitted that seizure, the trial court denied the motion to suppress, and defendant was convicted pursuant to his conditional guilty plea.

Before us, as before the trial court, defendant asserts that Rule's grabbing of the string of the pouch was a seizure of the pouch for purposes of Article I, section 9; as was the case before the trial court, the state does not appear to dispute that proposition.[3] That makes the issue before us, as framed by the parties, whether that seizure was authorized by the "officer safety" exception to the warrant requirement.

Under the "officer safety" exception to the warrant requirement, Rule was entitled to seize the pouch for officer safety purposes if (1) he subjectively believed either that the pouch itself was a dangerous or deadly weapon or that the pouch contained such a weapon, and (2) under the totality of the circumstances, that subjective belief was objectively reasonable. *State v. Wiggins*, 184 Or App 333, 340-41, 56 P3d 436 (2002); *see also State v. Gilkey/White*, 172 Or App 95, 99-100, 18 P3d 402 (2001); *State v. Miears*, 166 Or App 228, 235, 999 P2d 493 (2000). It was the state's burden to prove, by a preponderance of the evidence, that Rule's seizure of the pouch was justified by the "officer safety" exception to the warrant requirement. *Miears*, 166 Or App at 235.

The state did not meet that burden here. Whether Rule had a subjective belief that the pouch was, or contained,

---

[3] As the trial court recognized, it is not an obvious legal proposition that Rule's grabbing of the pouch string, without completely dispossessing defendant of the pouch, was a seizure for purposes of Article I, section 9. That issue is not before us because the state did not dispute before the trial court that Rule's grabbing of the string was a seizure, and does not appear to dispute that point before us.

a dangerous or deadly weapon is a question of fact. *Wiggins*, 184 Or App at 341. Here, the record contains no evidence permitting the factual finding that Rule had the necessary subjective belief that the pouch was, or contained, a weapon at the time of the seizure. Although the record would support a finding that Rule had such a belief up until the time he first saw the pouch (Rule testified that he initially believed that defendant was "attempting to conceal * * * a weapon such as I found the first time"), Rule testified that when defendant showed him the pouch, he "could see that it was a bag [but] couldn't tell what was in the bag." That statement does not permit a finding that, at that point in time, Rule subjectively believed that the bag was a weapon, or that it contained a weapon; the statement reveals nothing about what—if anything—Rule thought the pouch probably contained. And even if that testimony could, in some circumstances, support a reasonable inference that Rule subjectively believed that the pouch was, or contained, a weapon, it does not on the record created here. The record reflects that, upon seeing and seizing the pouch, Rule immediately began investigating whether it contained drugs, not whether it contained weapons. That indicates that Rule subjectively believed that the pouch contained drugs and makes it unreasonable to infer on this record that, after Rule saw the pouch, he subjectively believed that it was, or contained, a dangerous or deadly weapon.

Because the record does not permit a factual finding that Rule subjectively believed that the pouch was, or contained, a weapon, the trial court erred in concluding that Rule's warrantless seizure of the pouch was authorized by the "officer safety" exception to the warrant requirement and, therefore, erred in concluding that the seizure did not violate Article I, section 9. The remaining question is the extent to which that constitutional violation requires the suppression of the evidence obtained after the unlawful seizure. Under the Article I, section 9, exclusionary rule, "[w]henever the state has obtained evidence following the violation of a defendant's Article I, section 9, rights it is presumed that the evidence was tainted by the violation and must be suppressed." *State v. Miller*, 267 Or App 382, 398, 340 P3d 740 (2014). "The state may rebut that presumption

by proving, as relevant here, that the police did not exploit the unlawful police conduct to obtain the challenged evidence—that is, that the unlawful police conduct was 'independent of, or only tenuously related to' the disputed evidence." *State v. Benning*, 273 Or App 183, 191, 359 P3d 357 (2015) (citing *State v. Hall*, 339 Or 7, 27, 115 P3d 908 (2005)).

In its brief on appeal, the state has not provided any argument as to why, in the totality of the circumstances of this case, the suppression of all evidence discovered after Rule's unlawful seizure is not required. Rather, the state argues that Rule's seizure did not violate Article I, section 9, and that, therefore, there was no illegality for Rule to exploit. But, we have concluded otherwise: Rule's conduct did violate Article I, section 9. In the absence of a developed argument from the state demonstrating that Rule did not exploit that illegality to obtain any subsequently-discovered evidence, our case law dictates that suppression is required. *State v. Kimmons*, 271 Or App 592, 602, 352 P3d 68 (2015) (concluding that suppression was required to remedy violation of Article I, section 9, where, on appeal, "the state offer[ed] no reasoned explanation—or, indeed, any explanation at all—as to why, in the totality of the circumstances of this case, suppression is not required").

Reversed and remanded.