Argued and submitted October 6, reversed and remanded to trial court for new trial
December 22, 1987

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# ARTHUR LEE BATES,
*Petitioner on Review.*

## (TC 10-85-09534; CA A41686; SC S34094)

747 P2d 991

John P. Daugirda, Deputy Public Defender, Salem, argued the cause on behalf of the petitioner on review. With him on the petition was Gary D. Babcock, Public Defender, Salem.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause on behalf of the respondent on review.

GILLETTE, J.

## GILLETTE, J.

The issue in this case, a criminal prosecution for unlawful possession of a controlled substance and unlawful possession of a weapon, is whether the police lawfully searched defendant's automobile after stopping him for a traffic infraction. The trial court denied defendant's motion to suppress evidence found in that search. The Court of Appeals affirmed without opinion. *State v. Bates,* 85 Or App 428, 736 P2d 629 (1987). We reverse.

On December 17, 1984, at 4:40 a.m., Eugene City Police Officer Nauta stopped defendant for "excessive vehicle emissions," a Class D traffic infraction. *Former* ORS 483.765. Defendant was driving, in an otherwise lawful manner, a 1963 Chevrolet automobile with Washington license plates. Officer Nauta later described the area of the stop as a "high crime residential" area.

After stopping defendant, Officer Nauta called Officer Stroebel, who was in the immediate area, for assistance. When he arrived, both officers approached defendant's automobile, Officer Nauta from the driver's side. Nauta asked defendant for his driver's license. Defendant produced a valid Washington license. The automobile was seen by the officers to contain, in plain view, a television and a videocassette recorder.

Officer Stroebel, who was standing on the passenger side of the vehicle, commented on an object on the floorboard between defendant's feet. Nauta testified that, at that point:

"I shined my flashlight down between the Defendant's feet and could make out just the end of what appeared to be some kind of a bag, but I couldn't determine exactly what it was. And I asked Mr. Bates if he would reach down and very cautiously pull that item from between his feet, so I could see what it was."

Defendant did not pull the object into view. Instead, he reached under the seat and remained in that position while Nauta "repeatedly asked him to take ahold of what I couldn't see, what I couldn't make out, and to pull it out in plain view so I could see it." After approximately 10 seconds, Nauta drew his service revolver and ordered defendant out of the automobile. Nauta retrieved the closed black bag from under the

front seat. He felt something hard inside the bag and, opening it, found that it contained several rounds of live ammunition, drugs, and drug paraphernalia. Nauta then searched the automobile and discovered a loaded handgun under the front seat.

Defendant does not challenge the validity of the original stop, nor does he contend that the officer's use of a flashlight was a search. *See State v. Jackson,* 296 Or 430, 438 n 4, 677 P2d 21 (1984)(leaving the latter question open under the Oregon Constitution). He argues, however, that the officers exceeded their authority in asking him to slide the bag further into view and in searching the automobile when he did not comply.

■ As previously noted, defendant was stopped for a traffic infraction. *Former* ORS 484.353(2)(b), in effect at the time of this stop, provided:

"(2) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction *for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation.*" (Emphasis supplied.)[1]

Nauta's investigation of the object on the floorboard was not reasonably related to the excessive emissions violation for which defendant was stopped and, therefore, was not authorized by *former* ORS 484.353(2)(b). In instructing defendant to move the object, Officer Nauta exceeded the permissible scope of his authority to conduct a traffic infraction stop.

The state does not contend otherwise. Rather, it argues that, once defendant was validly stopped, Nauta reasonably suspected that defendant was armed and dangerous and, therefore, Nauta was entitled to take reasonable steps to protect himself and Stroebel. The state relies on *Michigan v. Long,* 463 US 1032, 103 S Ct 3469, 77 L Ed 2d 1201 (1983). In that case, police officers, patrolling a rural area late at night, observed the defendant driving erratically and at excessive

---

[1] *Former* ORS 484.353(2)(b) was repealed by Oregon Laws 1983, chapter 338, section 978. In its place, the legislature enacted ORS 810.410(3)(b), which contains identical language.

speed. When the automobile turned down a side road and swerved into a shallow ditch, the officers investigated. The defendant appeared to be under the influence of an intoxicant and did not readily respond to the officers' requests to produce his driver's license and vehicle registration. The officers observed a large hunting knife on the floorboard of the driver's side of the defendant's car. The officers then frisked defendant, but found no weapons. One of the officers noticed an object protruding from under the armrest in the front seat. He lifted the armrest and saw an open pouch containing marijuana.

The United States Supreme Court, interpreting the Fourth Amendment, held:

> "Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."

463 US at 1049 (quoting *Terry v. Ohio,* 392 US 1, 21, 88 S Ct 1868, 20 L Ed 2d 889 (1968)).

In view of the late hour, rural area, the defendant's manner of driving and apparent intoxication, and the discovery of the knife in plain view, the Court concluded that the police were "clearly justified" in their belief that the defendant "posed a danger if he were permitted to reenter his vehicle." *Id.* at 1050.

This court also has recognized that police officers are entitled to take steps reasonably necessary to their safety. In *State v. Riley,* 240 Or 521, 402 P2d 741 (1965), the defendant was stopped for driving a motor vehicle with defective tail lights. As defendant's car was stopping, the officers observed him bend over as if he were placing something under the front

seat. Defendant stepped out of his car as the two officers approached. As one officer questioned the defendant about his tail light violation, the other officer shined his flashlight into the car and noticed a gun handle protruding from under the front seat on the driver's side. He seized the gun and began to question the defendant about it. The defendant admitted that he hid the gun because he was an ex-convict and did not want the police to find it in his possession.

This court held that the seizure of the gun was lawful because, based on the defendant's efforts to conceal the gun, the police had probable cause to believe that he was carrying the gun without a permit. 240 Or at 524. The court also noted that:

> "The officers were justified in seizing the gun upon the further ground that it was reasonably necessary to their safety. Defendant was still near the car when Todd seized the weapon. There was no indication that defendant was about to make an effort to get the gun. When officer Todd was asked on direct examination if he was 'in fear of any assault by a weapon,' he responded, 'No, no more than you normally would be.' To justify the seizure of a weapon which could be used against the arresting officer we shall not draw a fine line measuring the possible risk to the officer's safety. The officer should be permitted to take every reasonable precaution to safeguard his life in the process of making the arrest." *Id.* at 524-25.

■ Although *Riley* was decided as a matter of constitutional law, it did not refer specifically to either the state or federal constitution. Upon consideration, we hold that Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present. As we noted in *Riley, supra,* 240 Or at 525, it is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations. Our inquiry therefore is limited to

whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time that the decision was made.

▪  Nauta testified that he was concerned for his safety because of the following facts:

> "* * * The vehicle has out-of-state plates. Time of day; high crime area; like it or not, the way [defendant] looks; and the fact that there is a VCR and television set in the back seat of the vehicle."

Nauta also testified that he was concerned because defendant did not comply with his instruction to move the bag and, instead, appeared to be reaching for some unseen object. We turn to a consideration of the legal significance of these facts. Our consideration requires that they be addressed individually, but the underlying question will be this: Did any of the circumstances confronted by the officer either individually or collectively justify a reasonable suspicion that the defendant posed an immediate threat to Nauta, Stroebel, or both?

Nauta did not explain his comment about defendant's appearance. Defendant described himself as an "Indian" with long hair and a beard, and stated that he was wearing a black leather jacket when he was stopped. Nothing in that description supports a reasonable belief that defendant was dangerous. This concern is entitled to no weight, whether viewed by itself or added to other factors. *Cf. State v. Valdez,* 277 Or 621, 628, 561 P2d 1006 (1977)("shined shoes, sharp clothes, neat 'Afro' haircuts, and people who stand and stare at officers" are not grounds for suspecting criminal activity in drugs).

Neither did anything in defendant's manner suggest that he was dangerous. Defendant had been driving in a reasonable manner and did not appear to be intoxicated. He cooperated with Nauta's request that he produce his driver's license and that he keep his hands in view at all times. Nauta testified that defendant had not displayed any aggressive or hostile behavior. Therefore, nothing in defendant's behavior weighs in favor of the officer's actions.

Other facts relied on as supporting the officers' actions include the late hour, the high crime rate in the area,

the out-of-state license plates on defendant's automobile, and the presence of the videocassette recorder and television. Those facts apparently suggested to Nauta that defendant may have committed burglary or theft and, therefore, had a motive physically to resist any inquiry by the police.

Nauta's suspicions in this regard may have been an excellent guess—the kind resulting from a sixth sense that many officers develop over the years. But, again, there is no objective quality to them that entitles them to any weight, either individually or collectively, in the constitutional calculus. Neither the hour nor the "high crime" nature of the area tells us whether *this* defendant is likely to be a criminal, unless there is some reason to think that everyone driving in that particular area at that time of night is up to no good (or is a policeman). There is no testimony to that effect in this record.

Similarly, the out-of-state license plates add nothing. Defendant had a valid out-of-state driver's license to go with them. Finally, nothing can be made—on this record—of the presence of the television and videocassette recorder. Certainly, such items are commonly stolen in burglaries. But neither Nauta nor Stroebel had any information that a burglary had been committed recently in the area and there was nothing about the items themselves to suggest they did not belong to defendant.

In summary, none of the foregoing circumstances either individually or collectively justified a suspicion on Nauta's part that this defendant posed an immediate threat. Nauta's suspicions, if justified, must rise or fall entirely on the bag under the driver's seat. We turn now to a consideration of that factor.

■ There was no sign of a weapon in the car. Nauta and Stroebel testified only that they saw what appeared to be a bag. Neither officer testified that he thought the object might be a weapon, or a case designed to hold a weapon. *Compare Michigan v. Long, supra* (knife in plain view); *State v. Riley, supra* (gun protruding from under seat); *State v. McGregor,* 57 Or App 78, 643 P2d 1315 (1982)(defendant seen entering car with a pistol case). Without any indication that the sack either was a weapon or contained one, the officers nonetheless sought to determine its contents. Defendant did not comply,

and the rest is history. This case then comes down to this: May officers, in the course of a necessarily brief encounter with a driver for the purpose of issuing a traffic citation for a Class D traffic infraction and without having any specific and articulable facts justifying their apprehension, constitutionally require the driver to remove and open a bag from beneath the driver's seat of the car?

Without more facts than those adduced at the hearing, we think the answer under the Oregon Constitution, Article I, section 9, must be "no." Although the police are entitled to some leeway in taking protective measures, we must draw the line at some point. The facts articulated by Nauta in this case fall short of creating a reasonable belief that this defendant posed an immediate threat. In light of defendant's cooperative attitude, his lack of aggressive or threatening behavior and the absence of any apparent weapon, the mere possibility that he might have committed a crime and the presence of what appeared to be a bag are not sufficient. The officers violated defendant's constitutional rights when they instructed him to slide the bag into view. Accordingly, the evidence obtained as a result of that instruction, *i.e.,* the weapon and drugs found in defendant's car, were obtained in violation of defendant's constitutional rights and his motion to suppress them should have been allowed.

Cases of this kind are not unusual.[2] They are also frustrating, for two reasons. The first is that, if there was something more in this case than Nauta testified to— something more that might have justified Nauta's actions— it was not brought out. We cannot presume the existence of other favorable facts; we must confine our review to the record made. That record is insufficient. Our second frustration is with the failure of the trial court to make findings, either oral or written, on the issue that is dispositive today. The day may

---

[2] *See, e.g., State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977); *State v. Butkovich,* 87 Or App 587, 743 P2d 752, *rev den* 304 Or 548 (1987) (passenger in parked car, visibly startled at presence of officer, bent over in manner of one placing something under front seat; actions did not justify officer in ordering people from car and searching under front seat); *State v. Messer,* 71 Or App 506, 692 P2d 713 (1984)(stop not justified where police officer saw only that two men were seated in a truck in a shopping mall parking lot and there was a knife between the two men lying on the seat); *State v. Anderson,* 46 Or App 501, 612 P2d 309, *rev den* 289 Or 903 (1980)(defendant parked in store lot at 1:00 a.m. and walked toward door of obviously closed store).

be fast approaching when we shall require such findings. *See State v. Dimeo,* 304 Or 469, 478 n 4, 747 P2d 353 (1987). Without them, a trial judge leaves the decision in cases like this vulnerable because there is no demonstration in the record of what the judge perceived to be the crucial facts and decisive rationale. Fact-finding makes for more precise, analytical decision-making. It should be the common practice.

The decision of the Court of Appeals is reversed. The judgment of the trial court is reversed, and the case is remanded for a new trial.