Argued and submitted April 30, reversed and remanded October 29, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# DON CARAWAY WEEMS,
*Appellant.*

## CFH99-0225; A111865

79 P3d 884

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals his conviction for possession of a controlled substance, methamphetamine. ORS 475.992(4)(b). He contends that the trial court erred in denying his motion to suppress evidence of methamphetamine found during his arrest on an outstanding warrant. We review for errors of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and reverse and remand.

The trial court made the following findings of fact, which are supported by evidence in the record. *Ehly*, 317 Or at 75. At approximately 4:00 a.m., Officer Wright observed a truck parked at a street corner with the back end of the truck sticking out into traffic. As Wright approached the vehicle, she noticed that defendant was slumped over with his hands in his lap. Wright was unsure whether defendant was conscious or unconscious. Wright told defendant that he had to move his vehicle because it was a traffic hazard. Defendant told Wright that his vehicle had run out of gas and that he was waiting for a friend to bring some. Wright returned to her patrol car and ran a driver's license and warrants check on defendant.

The dispatcher informed Wright that there was a "felony-caution" warrant for defendant's arrest for possession of methamphetamine. Wright had already called for a back-up officer. Sergeant Buchanan arrived and approached defendant. Buchanan told defendant that there was an outstanding warrant for his arrest and asked him to get out of his vehicle. Defendant obliged, revealing a large knife left on the seat where he had been sitting. Defendant was handcuffed and brought to the back of the patrol car. Wright then conducted a search of defendant, during which she discovered a bindle containing methamphetamine in one of defendant's pockets.

Defendant was transported to the Hermiston police department before being transported to the Umatilla County Jail. While in transit to the Hermiston police department from the scene of the arrest, defendant told Wright that he wanted to remove some articles of clothing and that if she did not allow him to do so, he would "fight [her] all the way."

Wright allowed defendant to remove those items of clothing at the Hermiston police station under the observation of a male dispatcher. The clothing was inspected and photographed before being thrown away.

Defendant challenges the validity of the search of his pockets, arguing that Wright was not entitled to go beyond the standard patdown because Wright did not have probable cause under Article I, section 9, of the Oregon Constitution, which provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The state argues that the search was proper for any one of three reasons: (1) Wright was entitled to conduct a patdown search of defendant on officer safety grounds; (2) Wright was entitled to conduct a search of defendant's pockets as a search incident to arrest; and (3) even if Wright was not entitled to search defendant, the bindle would have inevitably been discovered either when defendant entered the Hermiston police department or during an inventory of defendant at the Umatilla County Jail.

■ First, the state argues that Wright was entitled to search defendant on officer safety grounds. When asked at the suppression hearing why she had searched defendant, Wright stated that she had done so for "officer safety."

■ Under *State v. Clew*, 187 Or App 322, 326, 67 P3d 420 (2003), "[a] police officer may frisk an individual for weapons if [the officer] reasonably suspects that the individual poses a risk of immediate danger[.]" That reasonable suspicion must be based on "specific and articulable facts." *Id.* (quoting *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987)). *Clew* presents an analogous set of circumstances to this case. In *Clew*, an officer stopped the defendant for a traffic infraction. The officer determined that the defendant's driver's license was suspended and asked the defendant to step out of his car. When the defendant did so, the officer noticed a large knife attached to the defendant's belt. When the officer asked

the defendant whether he had any other weapons, the defendant did not respond directly, but instead moved his hand towards his pocket. The officer then conducted a patdown to check for other weapons. During the patdown, the officer found, based on his experience, what he suspected to be a marijuana pipe and a plastic bag holding a large quantity of marijuana. The officer then removed the items from the defendant's pockets. *Id.* at 324.

We held that the officer was entitled to conduct the patdown because the presence of the knife, the defendant's fidgety and unresponsive behavior to the officer's inquiries, and the defendant's movement toward his pocket, led to a reasonable fear that the defendant might pose an immediate threat to the officer's safety. *Id.* at 327. As to the officer's search of the defendant's pockets, we held that the officer developed probable cause to extend his search from the original weapons patdown because, according to his training and experience, he felt what he believed to be a marijuana pipe and a bag containing a large amount of marijuana, which gave him probable cause to extend his search. *Id.* at 327-28.

In this case, the state argues that Wright properly conducted a patdown of defendant because the "felony-caution" warrant, the knife in defendant's vehicle, and the time of day, 4:00 a.m., made Wright reasonably fear that defendant might pose an immediate threat to her safety. We agree with the state. The trial court did not err when it concluded that "Wright was authorized to conduct a 'patdown' or limited search for officer safety[.]" *See also State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986) ("a patdown or limited search for weapons to protect the officer or to prevent escape would be justified whenever a person is taken into custody").

The state next argues that Wright was justified in going into defendant's pockets to remove the bindle because a search incident to a lawful arrest is justified to protect an officer's safety. *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994), held that, "[u]nder Article I, section 9, there are three valid justifications for a search incident to lawful arrest: to protect the officer's safety, to prevent the destruction of evidence, and to discover evidence relevant to the crime for which the defendant was arrested." The state does not argue

that the search of defendant's pockets was conducted to prevent the destruction of evidence. Nor does the state argue on appeal that Wright searched defendant for evidence related to the crime committed. Thus, we must decide whether this was a valid search pursuant to the officer-safety prong of the search-incident exception to the warrant requirement.

We have already held that Wright was justified in conducting a patdown for officer safety. As for Wright's search inside the pockets of defendant, the trial court found that

"Wright was advised by dispatch that there was a 'felony-caution' warrant for the defendant's arrest for possession of methamphetamine. In addition, she observed a large knife on the seat where defendant had been sitting, indicating that the defendant was or may have been attempting to conceal the knife."

The court concluded that those "specific, articulable facts give rise to a reasonable suspicion that the defendant might pose an immediate threat of serious physical injury to the officers then present," which justified the further search of defendant. Wright testified at the suppression hearing that she searched defendant "[f]or officer safety." Wright did not testify as to why she believed that removal of items from defendant's pockets was warranted. The testimony from Wright is that she conducted a search, during which she discovered the bindle and removed it. In response to questioning by the court, Wright testified that "[defendant] was handcuffed, brought to the back of the patrol car and searched before I placed him into the patrol car." She then testified that she "patted him down, checked for weapons and then he was placed in the back seat of the patrol car after he was patted down." On further questioning by the court, Wright explained that she "checked all the pockets. * * * I did just a patdown. *Well, I guess it would be a search because when you, on a felony warrant, the practice is, they'd be arrested.* We do the processing at Hermiston and then they are taken to the county jail." (Emphasis added.) In addition to Wright's testimony that she conducted a search of defendant, the trial court's conclusion that a "further search" was justified by Wright's reasonable suspicion demonstrates that the trial court believed that Wright conducted not just a patdown, but

a search into defendant's pockets. Wright's further search was not justified because, after the patdown there was no evidence that defendant posed an immediate threat of injury to the officers present.

The state argues that this case is substantially the same as *Clew*. As noted, the officer in *Clew* continued to conduct a more intrusive search of the defendant and his car but that search was based on probable cause that the officer developed during the patdown. Here, even assuming that Wright did a patdown before she searched defendant's pockets, she did not testify that she developed probable cause that defendant possessed drugs during that patdown of defendant. Although Wright was entitled to conduct a patdown for officer safety, she lacked probable cause to reach inside and search defendant's pockets.

■ In support of its argument that a search was justified, the state has requested that we take judicial notice of a section from the Law Enforcement Data System (LEDS) Operating Manual that defines under what circumstances a "caution" indicator will be assigned to a warrant. The LEDS document was not presented to the trial court. Wright did not testify as to whether she was relying on the definition of "caution" given in the LEDS manual when she searched defendant. We deny the state's motion to take judicial notice of the LEDS document.

■ Alternatively, the state argues that inherent in the "felony-caution" warrant was a warning to Wright to be careful when dealing with defendant. We agree. However, a warning to be careful with a defendant can be garnered from a number of sources, including defendant's actions at the time of the arrest or from the presence of a knife on the seat of his truck. In this case, the combination of the knife and the felony-caution warrant indicate no higher a risk than that present in *Clew*, in which officer-safety concerns permitted the officer to conduct only the patdown. *Clew*, 187 Or App at 325-26.

■■ The state's third and final argument is that Wright's search of defendant was justified under the inevitable discovery doctrine. The state argues that the bindle would have been discovered either during an inventory at the Umatilla

County Jail or when defendant removed some of his clothing at the Hermiston police department. "To avail itself of the inevitable discovery rule, however, the state must establish that, in fact, following normal and predictable investigatory procedures, the evidence would have been discovered." *State v. Walker*, 181 Or App 548, 553, 47 P3d 65 (2002) (citing *State v. Johnson*, 177 Or App 244, 250-51, 35 P3d 1024 (2001)). The state did not establish those facts below, and the trial court did not base its decision on the inevitable discovery rule.

As for defendant's removal of clothing once he reached the Hermiston police department, such removal was not pursuant to a normal or predictable investigatory procedure. As defendant argues, if Wright had not searched defendant initially, he might not have sought to remove his clothing at the police department. It is impossible to predict what defendant's actions would have been in that situation.

■ The state also argues that the bindle would have been discovered during an inventory at the county jail. On appeal, the state asks us to take judicial notice of the Hermiston County Booking Procedure.

The state failed to timely introduce evidence of that document at trial, and the trial court refused to allow the state to append it to its memorandum of supplemental authorities. We deny the state's motion to take judicial notice of that document. *See generally State v. Johnson*, 153 Or App 535, 542-43, 958 P2d 887, *rev den*, 327 Or 554 (1998) (explaining why inventory issues generally should not be considered in the first instance on appeal).

Reversed and remanded.