Argued and submitted June 25, 2007; resubmitted en banc March 5, reversed and remanded April 23, 2008

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JOE GRANT RUDDER,
aka Joseph Grant Rudder,
*Defendant-Appellant.*

Coos County Circuit Court
05CR0568; A129931

183 P3d 212

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief were Ingrid Swensen, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Robert Wilsey, Certified Law Student, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Elizabeth A. Gordon, Assistant Attorney General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

EDMONDS, J.

Wollheim, J., dissenting.

## EDMONDS, J.

Defendant appeals a judgment of conviction for possession of a controlled substance, *former* ORS 475.992 (2003), *amended by* Or Laws 2005, ch 708, § 39, *renumbered as* ORS 475.840 (2005). He assigns as error the denial of his motion to suppress evidence of methamphetamine that was seized by the police from his person after he was stopped while walking to his residence. The issue on appeal is whether the search of defendant's pocket, from which the controlled substance was seized, was permissible under Article I, section 9, of the Oregon Constitution.[1] In our review, we are bound by the trial court's historical findings if they are supported by evidence in the record, and we review to decide whether the trial court correctly applied the applicable legal principles to those facts. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). As a result of our review, we reverse for the reasons explained more fully below.

In the early morning hours of August 10, 2004, Coos Bay Police Officer Babb responded to a residential burglar alarm. As he approached the area of the alarm, he observed defendant walking along a street. The officer stopped his patrol car and contacted defendant. During their conversation, Babb told defendant that he had contacted him because of the burglar alarm in the area. Defendant was not carrying anything and was wearing jeans, a sweater, and a coat. Babb observed that defendant was sweating profusely and that his hands were shaking. Babb also observed bulges in defendant's front pants pockets. He asked defendant about the bulges, and defendant responded by pulling out keys from one of the pockets. However, Babb observed that there was still a bulge in one of the pockets and asked defendant what else was in his pocket. Defendant responded that he had coins in his pocket and produced two coins. However, Babb continued to see a bulge in the pocket, and he commented on that fact to defendant. Defendant told Babb that he did not

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

want the officer to look into his pockets and that he then wanted to leave.

Babb testified that, at that point in the contact, he believed that defendant had in his possession stolen property from the burglary, a weapon, or controlled substances.[2] Babb decided to conduct a patdown of the exterior of defendant's body, and another officer, who had recently arrived on the scene, told defendant to put his hands up. As Babb began the patdown, defendant turned away on two occasions, despite being warned by the officer to stop moving. Babb then hand-cuffed defendant. In response to the prosecutor's questions during the hearing on defendant's motion to suppress, Babb testified:

"Q.  So, what happened when the Defendant then attempted to walk away?

"A.  Officer Mitts, who had arrived on scene a little bit before that, told him to stop and put his hands up away from his body.

"Q.  What happened then?

"A.  He did stop. I went to do a pat-down search of [defendant]. And as soon as I started to pat down his pocket, he turned away from me. He did this on two different times, and we had to tell him to stop moving away. And he was finally placed in handcuffs because he wouldn't obey instructions and would[n't] let us check his pockets.

"Q.  When you were attempting to pat him down, and he was moving away, were you concerned about that?

"A.  I was very concerned about that.

"Q.  Why?

"A.  Because, again, he's hiding something from me. And I don't know if this is a weapon, or what he's got there. But, if I'm patting someone down, and they're pulling away from me and not following instructions, then that's an officer-safety risk.

"Q.  Okay, what did you do after placing the Defendant in handcuffs?

---

[2] The burglary alarm was later determined to have been a false alarm.

"A.   Um, I took a finger, pulled out the top of his pockets again. I don't know what's in them. I shined my flashlight down in there. And this was his right, front pants pocket. I saw a green container. It was like a little Tupperware container. And at that point, I asked him if that was his dope, and he said it was.

"Q.   Why did you immediately ask him if that was his dope?

"A.   Because of the—again, the circumstances about how he was reacting. And I [saw] it was a little Tupperware container. So it wasn't a weapon. So, the other alternative is he's hiding it because it's his dope, and it's something that is about the right size to carry a user-amount of dope."

Later in the hearing, Babb identified the Tupperware container as having come from defendant's "right front pants pocket" and as containing methamphetamine.

In response to defendant's motion to suppress the contents of the Tupperware container, the trial court ruled that Babb's initial contact with defendant constituted a police-citizen encounter that did not involve any restraint of defendant's person. However, the court ruled that the officer thereafter developed a reasonable suspicion, based on defendant's appearance, his demeanor, his proximity to the area of the burglary alarm, and his selective removal of items from his pocket, that defendant was connected to the burglar alarm. In the court's view, the officer's handcuffing defendant and looking inside his pocket were constitutionally justified for purposes of officer safety.

On appeal, defendant argues, in part, that any concerns that Babb had for his safety, or the safety of the officer who arrived to assist him, had dissipated by the time that defendant was handcuffed and that the intrusion by Babb into defendant's pocket was not reasonable under the circumstances. The state responds that

"[t]he officer had several different reasons to conduct a search for officer safety. First, the officer had reasonable suspicion that a felony had been committed, and defendant was walking away from the scene with bulging pockets. That suggests that defendant might easily have concealed stolen property or a weapon in his pocket. Once the officer began a pat-down search, moreover, defendant turned

away. He did so twice, and that also triggered safety concerns for Officer Babb."

(Transcript references omitted.)

■■ The governing rule regarding searches pursuant to officer safety concerns was expressed by the Supreme Court in *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987):

> "Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

The test inquires "whether the precautions taken were reasonable under the circumstances as they reasonably appeared at the time that the decision was made[,]" *id.* at 524-25, and requires consideration of both the nature and extent of the perceived danger and the degree of intrusion resulting from the officer's conduct, *id.* at 526. Also,

> "it is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations."

*Id.* at 524. Finally, the state has the burden of establishing the validity of a warrantless search or seizure. *State v. Tucker*, 330 Or 85, 89, 997 P2d 182 (2000).

■ We apply the above principles to the circumstances of this case. First, we agree with the trial court that, at the point in time when the encounter turned into a restraint on defendant's ability to leave, Babb had a reasonable suspicion that defendant was connected to the burglary alarm. His restraint of defendant to conduct a patdown of defendant's exterior was therefore lawful. What remains is the issue of the lawfulness of the officer's search of the interior of defendant's pocket for officer safety purposes. In that regard, the record gives rise to several observations.

■      First, Babb did not testify or provide any specific or articulable facts as to why defendant posed an immediate threat of serious physical injury to him or the other officer after defendant was handcuffed. Indeed, Babb commenced a patdown of defendant's exterior, the least intrusive search that he could have conducted. When defendant failed to cooperate with the patdown, Babb handcuffed him, but, insofar as the record before us demonstrates, Babb did not continue or complete the patdown of defendant's exterior. Rather, without providing any explanation as to the need for a more intrusive search for officer safety purposes, he immediately engaged in a more intrusive search by pulling open defendant's pocket and searching its interior. In the absence of an explanation by Babb as to why it was necessary to look into the interior of defendant's pocket for weapons without first completing the patdown of the exterior of his pocket, we are left to speculate whether the precautions taken were reasonable under the circumstances at the time of the search. In other words, in order to justify a more intrusive search under Article I, section 9, it was incumbent on the state to demonstrate that the nature and the extent of the perceived danger required Babb to conduct a more intrusive search than merely completing the patdown of defendant's exterior.

Our prior decisions illustrate the above principle. In *State v. Weems*, 190 Or App 341, 346-47, 79 P3d 884 (2003), the defendant was arrested on an outstanding warrant, handcuffed, and brought to the back of the patrol car. The arresting officer then searched the defendant, during which she discovered a bindle containing methamphetamine in one of the defendant's pockets. The defendant challenged the warrantless search of his pockets under Article I, section 9, of the Oregon Constitution, arguing that the officer was not entitled to search him beyond a standard patdown of his exterior person in the absence of probable cause to believe that he possessed evidence of other crimes. The state responded that the search was justified by officer safety concerns.

In deciding the issue, we observed that a police officer may frisk an individual for weapons if the officer reasonably suspects that the individual poses an immediate risk of danger, so long as that suspicion is based on specific and

articulable facts. We concluded that, under the circumstances, the officer was authorized to conduct a patdown or a limited search for weapons in order to protect the officer and to prevent the defendant from escaping. *Weems*, 190 Or App at 345. However, in a statement that is directly relevant to this case, we also held that the officer's "further search [into the defendant's pockets] was not justified because, after the patdown there was no evidence that defendant posed an immediate threat of injury to the officers present." *Id.* at 347.

In contrast to our holding in *Weems*, we held in *State v. Rickard*, 150 Or App 517, 526, 947 P2d 215, *rev den*, 326 Or 234 (1997), that, under the circumstances of that case, it was permissible for the officers to extend their search from an exterior patdown to a full search of the pockets of each of a vehicle's occupants. *Rickard* demonstrates the circumstances in which it is constitutionally permissible to expand an exterior pat-down search into a search of the interior of the pockets of a stopped person. In that case, a citizen started yelling to the officer on patrol, "He's got a gun, a gun, a gun," and pointed to a vehicle. Concerned that someone in the vehicle was armed, the officer stopped the vehicle and with the help of other officers, removed all of the occupants of the vehicle and searched their pockets. We explained that it was reasonable for the officers to search the pockets of the vehicle's occupants because

"the potential for danger was great. The location of the stop exacerbated that potential. The stop occurred at night at a busy intersection in front of a restaurant. Police cars were blocking the intersection. People came to look, and the officers could not remove them from the area of danger. Even though the occupants would be handcuffed and placed in a police car, safety concerns were not over until the car had been searched, and [Officer] Coorpender testified that officers remained concerned. Handcuffing did not remove all possibility of danger or escape if items were left in pockets of the occupants when the circumstances included that the occupants were a group, unknown occupants might remain in the car, and there was no evidence that an officer guarded the occupants in the patrol car.

"In short, the need for *all* possible safety precautions was paramount, and the surroundings of the stop

demanded a quick response. The procedure the officers followed minimized the risk of danger to the officers and to the public and did so as quickly as possible."

150 Or App at 527 (emphasis in original).

This case is more like *Weems* than it is like *Rickard*. By the time that defendant was handcuffed, he was under the control of two officers. The defendant in *Weems* had been handcuffed and brought to the back of the patrol car before he was searched. As in this case, the officer who conducted the search into the defendant's pockets in *Weems* did not testify as to why she believed that removal of items from the defendant's pocket was warranted. 190 Or App at 346. Moreover, Babb did not testify that he was searching only for weapons when he looked into defendant's pants pocket and saw a small Tupperware container, nor did he explain why the bulge in defendant's pants pocket from a small Tupperware container could reasonably be interpreted as the bulge from a concealed weapon. The expanded intrusion into defendant's pocket might have been justified, for instance, if Babb had felt what appeared to be a weapon while patting down the exterior of defendant's pants pocket after defendant was handcuffed; under those circumstances, it would have been constitutionally permissible for him to have looked into the pocket. But that kind of evidence is missing from the record before us.

The dissent disagrees. In its view, our reasoning runs afoul of the admonition in *Bates* that we not uncharitably second-guess an officer's judgment in potentially life-or-death situations and that officers must be given considerable latitude to take safety precautions in such circumstances. Like the dissent, we are mindful of the *Bates* principles and recognize that our assessment must be based on the totality of the circumstances as they appeared to Babb at the time of the search. Our disagreement with the dissent focuses on the state's failure to demonstrate on the record the specific and articulable facts that establish that defendant posed an immediate threat to the officers' safety after defendant was handcuffed, thereby making a more intrusive search reasonable. In response to our reasoning, the dissent relies on defendant's appearance, demeanor, and efforts to leave the

scene or resist the patdown as indicative of the threat that he purportedly posed. The flaw with that reliance is that the state produced no evidence as to why defendant continued to present a threat *after he was handcuffed*. We are therefore unpersuaded by the dissent's analysis.

Reversed and remanded.

**WOLLHEIM, J.,** dissenting.

The trial court correctly denied defendant's motion to suppress, based on its determination that defendant posed an immediate threat to the officer's safety, which justified the officer shining a flashlight into defendant's front pants pocket. The majority concludes that shining a flashlight into defendant's pocket violated defendant's right under Article I, section 9, of the Oregon Constitution[1] to be free from unreasonable searches. Accordingly, the majority reverses defendant's judgment of conviction for possession of a controlled substance, *former* ORS 475.992 (2003), *amended by* Or Laws 2005, ch 708, § 39, *renumbered as* ORS 475.840 (2005). Because I agree with the trial court that shining a flashlight into defendant's pocket was justified by the officer's concern for his safety, I respectfully dissent.

To set the scene, around 4:00 a.m. one day in August 2004, Officer Babb was dispatched to a residence where an active burglar alarm was sounding. Approximately a block away from the residence, Babb saw defendant walking away from the residence. Babb stopped his car and approached defendant, who was acting very nervous; his hands were shaking, and he was sweating profusely. Babb noticed that defendant's front pants pockets were bulging, and when Babb asked defendant what was in his pockets, defendant fished around in the pockets and selectively removed some items. Visible bulges remained and defendant was getting more nervous. Defendant told Babb that "he didn't want [Babb] to look in his pockets." At that point Babb suspected that defendant had either "burglar tools," "something stolen from the burglary," "a weapon," or "drugs" in his pockets.

---

[1] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Concerned for his safety, Babb attempted to pat-down defendant, but defendant turned his body so that Babb could not touch his pockets. Despite instructions to stop moving, defendant again maneuvered himself to avoid being patted down. Babb then handcuffed defendant, used his finger to pull open defendant's front pocket, and shone his flashlight inside.

The majority does not dispute that "police officers are entitled to take steps reasonably necessary to their safety." *State v. Bates*, 304 Or 519, 523, 747 P2d 991 (1987). Rather, the majority concludes that the state failed to demonstrate specific and articulable facts that defendant posed an immediate threat to the officer's safety *after he was handcuffed* to justify Babb's looking into defendant's pocket. 219 Or App at 439. The majority's focus on the events that occurred after defendant was handcuffed is too narrow; the proper focus is on the totality of the circumstances facing the police officer once the officer determined that defendant posed an immediate threat of serious physical injury to the officer.

Here, Babb's safety concern was sufficiently particularized by the circumstances surrounding the stop—the proximity and apparent connection to the residential burglary—and by defendant's conduct during the stop—shaking, sweating profusely, selectively removing items from his pockets and actively trying to conceal other items, and moving his body during the attempted patdown so that Babb could not have access to his pockets.

The proper inquiry under the officer safety doctrine is "whether the precautions taken were reasonable under the circumstances *as they reasonably appeared at the time that the decision was made*." *Bates*, 304 Or at 525 (emphasis added). The sequence of events here likely occurred in a matter of seconds. As Babb testified, he was very concerned that defendant was "hiding something from me. And I don't know if this is a weapon, or what he's got there. But, if I'm patting someone down and they're pulling away from me and not following instructions, then that's an officer-safety risk." As did the trial court, I would conclude that Babb's conduct was reasonable under the circumstances as they appeared at that time.

Babb was not required to take the least intrusive course available to him in order to come within the officer safety doctrine. Rather, we measure an officer's actions by a test of reasonableness. *State v. Swibies*, 183 Or App 460, 470, 53 P3d 447 (2002). The fact that defendant was handcuffed at the time that Babb looked inside defendant's pocket did not remove all possibility of danger. *State v. Rickard*, 150 Or App 517, 526, 947 P2d 215, *rev den*, 326 Or 234 (1997).

Contrary to the majority's assertion, *State v. Weems*, 190 Or App 341, 79 P3d 884 (2003), does not compel the conclusion that Babb's shining a flashlight into defendant's pocket was not justified on officer safety grounds. 219 Or App at 436-37. In *Weems*, we held that the officer's "further search [into the defendant's pockets] was not justified because, *after the patdown* there was no evidence that defendant posed an immediate threat of injury to the officers present." *Weems*, 190 Or App at 347 (emphasis added). However, the circumstances facing the officer in *Weems* were different from the circumstances here. In *Weems*, the officer had completed the patdown before searching the defendant's pockets. *Id.* Here, Babb attempted twice to patdown defendant, but defendant failed to follow Babb's order to stop moving and would not allow Babb to patdown defendant's pockets. Additionally, in *Weems*, the officer's safety concern was based on the defendant's " 'felony-caution' " warrant and the fact that when the defendant got out of his car, the officer saw a knife on his seat. *Id.* at 343. Nothing suggests that the defendant in *Weems* was conducting himself in a manner that gave rise to safety concerns. In contrast, here, Babb's safety concern was based on defendant's conduct during the stop—specifically, defendant manipulating and concealing the contents of his pockets, his nervousness, his failure to obey Babb's instruction to stop moving, and his refusal to allow Babb to patdown his pocket.

As the Supreme Court stated,

"Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the

officer or to others then present. * * * [I]t is not our function to uncharitably second-guess an officer's judgment. A police officer in the field frequently must make life-or-death decisions in a matter of seconds. There may be little or no time in which to weigh the magnitude of a potential safety risk against the intrusiveness of protective measures. An officer must be allowed considerable latitude to take safety precautions in such situations."

*Bates*, 304 Or at 524.

In these circumstances, I would not second-guess Babb's split-second decision to pull open defendant's front pants pocket and shine a flashlight into it as a safety precaution to determine whether defendant possessed a weapon.

I respectfully dissent.

Sercombe, J., joins in this dissent.