Argued and submitted January 26, reversed and remanded June 9, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DONALD RAY PHILLIPS,
*Defendant-Appellant.*

Douglas County Circuit Court
18CR54193; A170229

491 P3d 99

Defendant was convicted of driving under the influence of intoxicants, ORS 813.010, after police discovered that he was intoxicated while driving his all-terrain vehicle (ATV) to the scene where deputies were arresting his cousin for other crimes. He appeals, arguing that the trial court erred in denying his motion to suppress the evidence of his intoxication because he was unlawfully seized when one of the deputies directed him to turn around and put his hands behind his back. The state argues that the seizure was justified by both the deputy's reasonable concern for safety and by his reasonable suspicion that defendant had attempted to interfere with his cousin's arrest by revving his ATV's engine and approaching the scene. *Held*: Neither the officer-safety doctrine nor reasonable suspicion provided justification for the deputy's order. Assuming that the deputy's safety concerns were reasonable, the order for defendant to turn around and put his hands behind his back to be handcuffed was disproportionate to the minimal threat that defendant posed. Moreover, although the deputy may have subjectively believed that defendant was attempting to interfere with the arrest because he revved his ATV's engine and approached the arrest scene, that belief was not objectively reasonable. Permitting the deputy to detain defendant based solely on a subjective belief that defendant was attempting to interfere would effectively criminalize observing police officers and render interfering with a peace officer an attitude crime.

Reversed and remanded.

William A. Marshall, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services, argued the cause and filed the brief for appellant.

Daniel Norris, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Defendant was charged with driving under the influence of intoxicants, ORS 813.010, after police discovered that he was intoxicated while driving his all-terrain vehicle (ATV) to the scene where deputies were arresting his cousin for other crimes. Defendant moved to suppress the evidence of his intoxication, arguing that he was unlawfully seized in violation of Article I, section 9, of the Oregon Constitution when one of the deputies directed him to turn around and put his hands behind his back during the course of the encounter. The trial court denied his motion after determining that the deputy's order was justified under the officer-safety doctrine. We conclude that the deputy's order was not justified by either the officer-safety doctrine or by a reasonable suspicion that defendant had committed the crime of interfering with a peace officer, ORS 162.247. Accordingly, we reverse and remand.

## I.   FACTUAL BACKGROUND

Just before midnight on July 27, 2018, Douglas County Sheriff's Deputies Cutsforth and Pitcher were riding ATVs out on patrol in the Oregon Dunes Natural Recreation Area. "Dunes Fest"—an annual, multi-day ATV event—was underway, and the nightly concert had just ended. As concertgoers were dispersing, Cutsforth noticed two individuals up by the stage yelling and spinning circles on their ATVs. Cutsforth observed one of them—later identified as defendant's cousin—rev his engine loudly and depart the stage area at a high rate of speed via one of the festival's "road lanes," sand roads that connect the concert area to nearby campsites. Because the posted speed limit for the road lanes was five miles per hour, Pitcher activated his ATV's lights and siren and began pursuing defendant's cousin. As Cutsforth began to follow to assist, he observed the second individual—later identified as defendant—also depart the stage area at a high rate of speed.

Rather than yielding to Pitcher, defendant's cousin attempted to elude him for approximately half a mile. By the time Cutsforth caught up, Pitcher had already ended the chase by "interject[ing] his ATV into [defendant's cousin's]

ATV" and was in the process of arresting defendant's cousin on the side of the road lane. At that point, Cutsforth began performing "cover officer functions" for Pitcher, including monitoring the scene to ensure that no one else interfered with the arrest.

Shortly thereafter, Cutsforth noticed a second ATV approaching the arrest site from the far end of the road lane, although he could not see that defendant was the driver. As defendant neared the arrest site, he slowed his ATV and revved the engine loudly six times, causing the ATV's tires to throw sand up into the air. The noise was so loud that it caused Cutsforth and Pitcher to both temporarily stop what they were doing and focus their attention on defendant. Defendant pulled his ATV off to the opposite side of the road lane, dismounted, and began walking across the grass toward the deputies.

As defendant approached, Cutsforth told him that "I suggest you stay on that side of the road, partner."[1] Defendant did not immediately stop walking but did remain on the grass on the far side of the roadway from the deputies. At the same time, defendant ran his left hand through his hair and put it in his pants pocket. Pitcher told Cutsforth to "detain [defendant] for this" and Cutsforth ordered defendant to turn around and put his hands behind his back. Defendant initially refused, arguing that he had heeded Cutsforth's warning and remained on the far side of the road. In response, Cutsforth drew his taser and again ordered defendant to "[p]ut your hands behind your back or you're gonna get tased." Defendant complied and Cutsforth ordered him to get down onto his knees, at which point another backup deputy, who had just arrived, placed defendant in handcuffs. During subsequent questioning, Cutsforth developed a reasonable suspicion that defendant had been driving under the influence of intoxicants and expanded the scope of his investigation. Ultimately, defendant failed several field sobriety tests, registered a blood alcohol content (BAC) of .18 on a breath test, and made several incriminating statements.

---

[1] The trial court determined that this statement was a mere suggestion rather than an order.

Defendant was charged with driving under the influence of intoxicants, ORS 813.010, and moved to suppress all the evidence obtained during his detention. He argued that Cutsforth lacked a legal basis for ordering him to turn around and put his hands behind his back and that his detention therefore violated Article I, section 9, of the Oregon Constitution. The state responded that Cutsforth's order was justified by a reasonable suspicion that defendant had attempted to interfere with a peace officer in violation of ORS 162.247(1)(a) by revving his ATV's engine and approaching the deputies. The trial court concluded that Cutsforth's order was justified by a reasonable officer-safety concern and denied defendant's motion to suppress.

On appeal, defendant challenges the denial of the motion to suppress. He argues that neither officer safety nor Cutsforth's suspicion that he had violated ORS 162.247(1)(a) provided a lawful basis for the order to turn around and put his hands behind his back, and thus the evidence obtained from the seizure should have been suppressed.

## II.   STANDARD OF REVIEW

We review the trial court's denial of defendant's motion to suppress for legal error and are bound by the court's express and implicit findings of fact, provided that there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

## III.   ANALYSIS

Article I, section 9, of the Oregon Constitution establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." A person is considered "seized" for constitutional purposes when (1) a police officer intentionally and significantly interferes with an individual's liberty or freedom of movement; or (2) a reasonable person, under the totality of the circumstances, would believe that his or her liberty or freedom of movement has been significantly restricted. *State v. Ashbaugh*, 349 Or 297, 303, 244 P3d 360 (2010) (internal quotation marks omitted). When an individual is seized without a warrant, that seizure is *per se*

unreasonable unless justified by one of the established and well-delineated exceptions to the warrant requirement. *State v. Edwards*, 304 Or App 293, 296, 466 P3d 1034 (2020).

Here, the parties agree that Cutsforth's order for defendant to turn around and put his hands behind his back constituted a seizure. The state contends, and defendant disputes, that the order was justified by an exception to the warrant requirement—either the officer-safety doctrine or reasonable suspicion that defendant committed a crime. We address each in turn.

A.   *The Officer-Safety Doctrine*

Article I, section 9, permits officers to take reasonable steps to protect themselves or others, which can include seizing the defendant, but the state must satisfy a two-part burden of proof and persuasion. *State v. Ramirez*, 305 Or App 195, 205, 468 P3d 1006 (2020). First, the state bears the burden of establishing that: (1) based on specific and articulable facts known to the officer, the officer (2) had subjective reasonable suspicion, that (3) the defendant posed an immediate threat, and (4) the threat was of serious physical injury. *Id.* Second, the state must prove that (1) the officer's subjective safety concerns of an immediate threat of serious physical injury were objectively reasonable, and that (2) the officer's response to the safety concerns was, itself, objectively reasonable. *Id.* To determine whether an officer's suspicion or the precautions that the officer took were reasonable, we look to the totality of the circumstances. *State v. Bailey*, 307 Or App 782, 789, 479 P3d 304 (2020).

The state points to several facts which it argues justified Cutsforth's safety concerns, including that: (1) it was nighttime; (2) the deputies were making a felony arrest; (3) defendant revved his engine repeatedly making a loud noise as he approached the scene; (4) in Cutsforth's words, defendant approached the arrest scene "like [he was] gonna fight me"; (5) defendant did not immediately stop when Cutsforth suggested that he remain on the far side of the road; and (6) defendant put his hand in his pocket. Assuming these circumstances create a reasonable concern for officer

safety, the question is whether Cutsforth's choice of protective measures—immediately ordering defendant to turn around and put his hands behind his back to be handcuffed—was a proportionate response.

Recognizing that police officers must "make life-or-death decisions in a matter of seconds," we generally allow "considerable latitude to the police in choosing how to protect themselves." *State v. Madden*, 363 Or 703, 719, 427 P3d 157 (2018). That latitude, however, is bounded by the principle that "protective measures must be proportionate to the perceived threat." *Id.* Accordingly, "the officer safety doctrine does not excuse protective measures that are disproportionate to any threat that the officers reasonably perceive." *State v. Rudder*, 347 Or 14, 23, 217 P3d 1064 (2009). Although we are "sensitive to the dangers inherent in police work and to the difficulties inherent in officer safety decisions, that does not and cannot mean that we regard those concerns as having greater weight than the constitutional right of all persons." *Id.*

Cutsforth's decision to immediately order defendant to turn around to be handcuffed was disproportionate to any threat defendant posed to the deputies by approaching the arrest scene and placing his hand in his pocket. At the time of Cutsforth's order, defendant was still some distance away from the arrest scene. Although he did not stop moving, defendant complied with Cutsforth's warning to stay on the grass on the far side of the road. The trial court did not find that he exhibited any violent or aggressive behaviors, and there was no reason to believe that he was armed with a firearm or any other weapon that could have been used to cause serious harm to the deputies from a distance. Handcuffing defendant imposed a significant restraint on his freedom of movement when, by contrast, the safety risk that defendant posed to the deputies was minimal. *See, e.g.*, *State v. Johnson*, 120 Or App 151, 158, 851 P2d 1160, *rev den*, 318 Or 26 (1993) (concluding that immediately handcuffing the defendant was disproportionate to the threat he posed to officers by being present at the arrest scene with his hand concealed when police knew he had previously been arrested on weapons charges).

Additionally, any risk defendant posed to the deputies at the scene was mitigated by the fact that Cutsforth was serving as a designated cover officer. As Cutsforth testified, his job during the arrest was to "ensur[e] that the situation is under control from start to finish," including "making sure that nobody is interjecting into that contact." As a result, Cutsforth was free to monitor defendant to ensure that he remained at a safe distance and take action if defendant tried to interfere with the arrest or began to act threateningly. *See State v. Hebrard*, 244 Or App 593, 598-99, 260 P3d 759 (2011) (concluding that, although officer-safety concerns may have initially justified the lone officer's order for four otherwise cooperative suspects to put their hands up, the safety concerns did not justify handcuffing those individuals once other officers arrived).

Up until the point that Cutsforth ordered defendant to turn around and put his hands behind his back, the only risk that defendant reasonably posed to the deputies was walking toward the scene of an arrest and placing his hand in his pocket. Apart from revving his engine loudly and approaching the scene assertively, nothing else about defendant's behavior would have suggested that he was so dangerous that he needed to be placed in handcuffs or that he would not comply with a more proportionate measure.[2] As a result, Cutsforth's order for defendant to turn around to be handcuffed was disproportionate to any threat and was therefore unreasonable. The officer-safety doctrine did not provide a lawful basis for Cutsforth's order.

B.   *Reasonable Suspicion*

The state next asserts that Cutsforth's order was justified as part of an investigatory detention after Cutsforth developed reasonable suspicion that defendant had attempted to interfere with the performance of his

---

[2] Although defendant did not immediately comply with Cutsforth's order to turn around and put his hands behind his back, the reasonableness of the protective measures that Cutsforth chose is assessed under the totality of the circumstances at the time that he gave the order. *See Madden*, 363 Or at 719 (explaining that the officer-safety doctrine requires evaluation of "whether the precautions taken were reasonable under the circumstances as they reasonably appeared *at the time that the decision was made*" (internal quotation marks omitted; emphasis added)).

and Pitcher's duties, in violation of ORS 162.247(1)(a).[3] In relevant part, ORS 162.247(1)(a) prohibits a person from "[i]ntentionally act[ing] in a manner that prevents, or attempts to prevent, a peace officer *** from performing the lawful duties of the officer with regards to another person." To attempt to prevent an officer from performing the officer's lawful duties, a defendant must engage in a physical action that, although it does not completely stop officers from performing their lawful duties, nevertheless constitutes a substantial step toward that end. *State v. Scheirman*, 295 Or App 238, 244-45, 433 P3d 761 (2018).

Here, the state argues, Cutsforth had a reasonable suspicion that defendant was attempting to stop the deputies' performance of their duties after he observed defendant rev his engine six times—loudly enough to distract both of the deputies from the arrest of defendant's cousin— dismount his ATV, and (at least in Cutsforth's view) aggressively approach the arrest scene. Accordingly, to investigate that crime, Cutsforth was permitted to detain defendant by ordering him to turn around and put his hands behind his back to be handcuffed. Defendant responds that Cutsforth lacked the requisite reasonable suspicion because, as a matter of law, making a loud noise and approaching the scene of an arrest from the opposite side of the road cannot violate the statute.[4]

Article I, section 9, of the Oregon Constitution and ORS 131.615 permit a police officer to conduct a "brief, informal detention for purposes of on-the-scene investigation of criminal activity" when the officer develops a reasonable suspicion based on "specific and articulable facts *** that criminal activity is afoot." *State v. Washington*, 284 Or App

---

[3] The state does not contend that Cutsforth had reasonable suspicion to detain defendant for driving his ATV recklessly or exceeding the posted five mile-per-hour speed limit.

[4] Although defendant does not argue this point, we observe that the restriction imposed by handcuffing defendant typically converts a stop into an arrest, requiring the officer to possess probable cause, not reasonable suspicion, of the commission of a crime. *See* ORS 133.005(1) (an arrest occurs when a person is placed "under actual or constructive restraint"); *State v. Werowinski*, 179 Or App 522, 528, 40 P3d 545, *rev den*, 334 Or 632 (2002) (recognizing that handcuffing a suspect is often "a key factor in transforming the detention associated with a stop into an arrest").

454, 461, 392 P3d 348 (2017) (internal quotation marks omitted). The facts giving rise to the officer's suspicion must be "particularized to the person [stopped] and based on the person's conduct." *State v. Martin*, 260 Or App 461, 469, 317 P3d 408 (2014). Moreover, "an officer may not stop a person simply because the person's conduct is consistent with criminal conduct; the nature of the conduct matters." *Id.* at 469-70.

Here, the record does not support a reasonable inference that defendant attempted to prevent Cutsforth and Pitcher from performing their duties by revving his ATV's engine and approaching the arrest scene. Although the trial court's findings reflect that the deputies were temporarily prevented from performing their duties when they were distracted by defendant's approach, they do not suggest that defendant intended that to happen or was even aware that his actions prevented their official duties. *See Scheirman*, 295 Or App at 245 ("[M]erely creating a distraction, without the intent to perform an action objectively capable of stopping the performance of duties is not the type of prevention ORS 162.247(1)(a) addresses.").

Here, defendant never refused to comply with a deputy's command to stay away from the arrest scene or disregarded a warning that he was interfering, so as to support a reasonable inference that his interference was intentional. *Cf. id.* (record contained sufficient evidence that defendant intended to interfere with performance of officers' duties when he repeatedly approached arrest scene despite officers' multiple warnings that he was interfering). Defendant heeded the single warning he was given in the time before he was arrested and remained some distance away from the arrest scene on the far side of the road. Further, the trial court did not find that anything about defendant's demeanor suggested that he likely intended to interfere with his cousin's arrest.[5]

The only evidence that may circumstantially suggest that defendant intended to interfere by approaching

---

[5] The incident was captured on Cutsforth's body cam and supports the trial court's finding that the manner of defendant's approach did not suggest an intent to interfere, nor did it suggest an intent to engage in an altercation.

the arrest scene was that he loudly revved his ATV's engine several times as he parked, and Cutsforth interpreted his approach as aggressive. Under the totality of the circumstances, we are unpersuaded that that evidence gives rise to an objectively reasonable suspicion that defendant attempted to prevent the arrest by approaching. *See DeNucci v. Henningsen*, 248 Or App 59, 76, 273 P3d 148 (2012) (ORS 162.247(1)(a) does not apply to mere noise like a person's voice that distracts an officer; it applies only to "physical conduct" that prevents or attempts to prevent an officer from performing the officer's duties). Although Cutsforth interpreted defendant revving his ATV's engine as a sign of aggression because it is loud, permitting him to detain defendant based solely on that subjective belief would render ORS 162.247 little more than an attitude crime. *See State v. Bledsoe*, 311 Or App 183, 195, 487 P3d 862 (2021) (James, J., concurring) (observing that an arrest under the interfering with a peace officer statute "largely turns on the subjective perceptions of the officer about the attitude of the defendant during the police-citizen encounter"). ORS 162.247 does not criminalize the act of approaching and observing officers performing their duties, regardless of the officer's subjective belief as to the attitude of the observer.

Particularly at an event like Dunes Fest, it is not uncommon for a driver of a recreational vehicle to rev the engine for reasons other than communicating aggression, or for no reason at all. Given the trial court's finding that, at the time that defendant was approaching, the deputies were unaware that he was the other person that they had seen accompanying the person that they were arresting, Cutsforth's suspicion that defendant attempted to interfere in the arrest was not objectively reasonable. Accordingly, we conclude that Cutsforth lacked a legal basis for seizing defendant.

## IV.   CONCLUSION

In sum, neither reasonable officer-safety concerns nor reasonable suspicion justified Cutsforth's order for defendant to turn around and put his hands behind his back. Accordingly, Cutsforth's order violated Article I, section 9, and the trial court should have granted defendant's motion

to suppress all the evidence obtained during his detention. Because that evidence—including defendant's field sobriety test results, BAC reading, and incriminating statements—was critical to the state's case at trial, the error was not harmless. *See State v. Lachat*, 298 Or App 579, 589, 448 P3d 670 (2019), *rev den*, 366 Or 257 (2020) (error is only harmless if there is "little likelihood" that it affected the verdict).

Reversed and remanded.