Submitted October 21, 2022; Count 1 reversed, remanded for resentencing, otherwise affirmed February 23, 2023

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KRISTINA EVA DONATO,
*Defendant-Appellant.*

### Curry County Circuit Court
20CR59860; A175853

525 P3d 493

Defendant appeals her judgment of conviction for interfering with a peace officer (IPO) (Count 1) and harassment (Count 2). She assigns error to the trial court's denial of her motion for a judgment of acquittal (MJOA) on Count 1, which relates to allegations that defendant refused to obey a peace officer's lawful order to sit down in a patrol car. Defendant challenges the sufficiency of the evidence to establish the order's lawfulness for the purpose of an IPO conviction. The state contends that defendant's claim is unpreserved and that, regardless, the order was justified on officer-safety grounds. *Held*: Defendant preserved her challenge to the lawfulness of the order by objecting below to the sufficiency of the evidence to establish that the officer had authority to issue any order at the specified time. On the merits, the state failed to meet its burden to prove that the officer-safety concerns lawfully justified the order. The evidence did not support a conclusion that the officer subjectively believed that defendant's actions prior to the order constituted a threat to his safety or that the basis for any such threat was objectively reasonable. Evidence that defendant was handcuffed at the time and that a second officer was present for safety purposes mitigated any safety concerns. Also, the officer's testimony that defendant's behavior prior to his order offended rather than concerned him for his safety indicated that the officer had no subjective safety concerns toward defendant. The trial court thus erred in denying defendant's MJOA.

Count 1 reversed; remanded for resentencing; otherwise affirmed.

Cynthia Lynnae Beaman, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Matthew Blythe, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher A. Perdue, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Hellman, Judge, and Landau, Senior Judge.

ORTEGA, P. J.

Count 1 reversed; remanded for resentencing; otherwise affirmed.

**ORTEGA, P. J.**

Defendant appeals from a judgment convicting her of interfering with a peace officer (IPO) (Count 1) and harassment (Count 2). She assigns error to the trial court's denial of her motion for a judgment of acquittal (MJOA) on Count 1. She argues, among other things, that the evidence is insufficient to establish that Officer Smithers's order to "sit down" was "lawful" for the purpose of her IPO conviction. The state disagrees, contending that defendant did not preserve her argument concerning the lawfulness of the order and that, regardless, the order was justified on grounds of officer safety. Because we conclude that defendant's challenge is preserved and that the evidence was not sufficient to establish that Smithers's order was lawful, the trial court erred in denying defendant's MJOA on Count 1. Accordingly, we reverse the judgment of conviction as to that count, remand for resentencing, and otherwise affirm.

We review the denial of an MJOA for legal error. *State v. Newkirk*, 319 Or App 131, 133, 509 P3d 757, *rev den*, 370 Or 214 (2022). In doing so, "we view the evidence in the light most favorable to the state to determine whether a rational factfinder could find that the state had proved every element of the offense beyond a reasonable doubt." *State v. Fields*, 304 Or App 763, 764, 468 P3d 1029 (2020); ORS 136.445. We set forth the relevant facts with that standard in mind.

On the occasion at issue, Officer Smithers approached defendant and her son, who were in their parked truck. Smithers intended to investigate an incident involving defendant's son, whom Smithers believed to be driving without a license. As Smithers attempted to talk to defendant's son, defendant got out of the truck. She was agitated and continuously yelled at Smithers and at Detective Freeman, who had arrived at the scene to assist Smithers. Smithers handcuffed defendant, and defendant kicked him in the shin. Smithers took defendant to the patrol car and instructed her to sit down three times before she complied the fourth time.

The state charged defendant by information with harassment (ORS 166.065) for kicking Smithers and IPO

(ORS 162.247 (2019), *amended by* Or Laws 2021, ch 254, § 1)[1] for failing to sit down upon his first three requests. Defendant pleaded not guilty, and the case was tried to a jury.

Smithers testified at trial, and the state introduced video footage of the incident recorded by the dashboard camera on Smithers's patrol car. According to Smithers, when he approached the truck's passenger side door to talk to defendant's son, defendant—who was in the driver's seat—became "confrontational." Video footage showed that the truck's doors were closed and defendant's arms were reaching out of the truck's driver-side window as Smithers approached; as Smithers tried to speak to defendant's son, defendant said, among other things, "Call your supervisor"; "I'm driving, bitch"; "I suggest before you force a Waco motherfucking situation here [inaudible]"; "Get the fuck off my fucking car *** terrorist bitch." As Smithers spoke to defendant's son, defendant got out of the truck and moved toward Freeman, who had arrived at the scene to ensure Smithers's safety. The video footage shows that, while getting out of the truck, defendant said, "Look at me"; "I have no fucking gun"; "You see." She was wearing tight-fitting clothes that could not conceal a weapon.

Defendant then approached Freeman and stood by him for about a minute, saying, among other things, "Get your supervisor here now"; "You guys want Waco? You want to force a Waco situation in Brookings?" She then started moving closer to Freeman and quickly changed direction and moved towards Smithers while saying, "Get the fuck off my car, bitch." Freeman immediately followed defendant. Smithers testified that he attempted to tell defendant to stop but "she got too close too fast," giving Smithers no time to finish his sentence advising her to stop, so he promptly began to handcuff her. The video shows that Freeman put

---

[1] In 2021, the legislature amended ORS 162.247. Or Laws 2021, ch 254, § 1. The amendment is not relevant to our analysis. *See id.* at § 2 ("The amendments to ORS 162.247 by section 1 of this 2021 Act apply to conduct alleged to constitute an offense under ORS 162.247 occurring on or after the effective date of this 2021 Act."); *see also State v. Lanig*, 154 Or App 665, 670, 963 P2d 58 (1998) ("Whether a particular enactment is to be applied retroactively is a matter of legislative intent."). Accordingly, we cite to the 2019 version of the statute, which was current at the time of the incident.

his hand against defendant's shoulder while Smithers hand-cuffed her. At that point, defendant asked, "How many officers do you think I'm going to take down?" Smithers advised her, "I'm doing this for my own safety," and told her to relax, as she continued to be verbally confrontational. Smithers testified that defendant physically cooperated while being handcuffed but continued to curse and yell. She said to Smithers, "Take your hands off me," at which point she stomped on the ground and kicked Smithers, who was hand-cuffing her hands behind her back.

Once defendant was handcuffed, Smithers and Freeman walked her to the patrol car, and Smithers instructed her to sit down four times. Defendant complied after eight seconds, on Smithers's fourth request. According to Smithers, being kicked on the job offended him; he did not say that it caused him concern for his safety and did not explain why he took defendant to the patrol car.

At the close of evidence, defendant moved for a judg-ment of acquittal on both the harassment and IPO charges. Regarding the IPO charge—the only charge at issue on appeal—defendant argued that the evidence was insuffi-cient to establish that she knowingly disobeyed Smithers's order or that Smithers had "authority" to place her in the patrol car at that point in time, considering that she was not under arrest.

The trial court denied defendant's MJOA. It con-cluded that the evidence was sufficient to go to the jury, con-sidering that the elements to be proved were that defendant "unlawfully and knowingly refused to obey a lawful order" by Smithers rather than "resisting arrest" or "interfering." The jury found defendant guilty, and the court entered a judgment of conviction.

On appeal, defendant assigns error to the trial court's denial of her MJOA on the IPO charge.[2] She argues that neither handcuffing her nor ordering her into the patrol

_____

[2] A challenge to the sufficiency of the evidence that an officer's order was lawful, for the purpose of proving an element of the crime, is properly raised in a motion for a judgment of acquittal. *State v. White*, 211 Or App 210, 214-17, 154 P3d 124, *adh'd to as clarified on recons*, 213 Or App 584, 162 P3d 336, *rev den*, 343 Or 224 (2007).

car was legally justified; rather, she argues, those actions were disproportionate and unreasonable under the circumstances. The state contends that defendant did not preserve her challenge to the lawfulness of Smithers's order and that, regardless, the order was lawful because it followed a lawful detention that was reasonable as a safety precaution.

We begin with preservation. Appellate courts generally will not review a claim of error that was not preserved in the lower court. ORAP 5.45 (1). "[A]n objection as to the legal insufficiency of evidence to prove a claim" requires that the objecting party "explain to the court and opposing party a specific reason for the asserted legal insufficiency." *State v. K. J. B.*, 362 Or 777, 791, 416 P3d 291 (2018).

Asserting that defendant's challenge to the lawfulness of Smithers's order is unpreserved, the state contends that defendant did not sufficiently alert the trial court of her objection to the lawfulness of her handcuffing or of Smithers's order itself. We need not decide whether a challenge to Smithers's authority to handcuff defendant is preserved because the lawfulness of Smithers's encounter with her is not dispositive as to whether any order given during the encounter was lawful. *State v. Kreis*, 365 Or 659, 668 n 16, 451 P3d 954 (2019) (explaining that the lawfulness of an order under ORS 162.247(1)(b) is to be judged "independently of the validity of the initial police confrontation").

As to whether defendant's challenge to the lawfulness of Smithers's order itself is preserved, we conclude that defendant preserved her challenge. Defendant's objection to Smithers's authority to place her in the patrol car sufficiently alerted the trial court to her challenge to the sufficiency of the evidence as to that element. By asserting below that the evidence was insufficient to establish that Smithers had "authority" to issue the disputed order, defendant fairly apprised the trial court and the state of the "specific reason for the asserted legal insufficiency" of the order. *K. J. B.*, 362 Or at 791; *see also Hagler v. Coastal Farm Holdings, Inc.*, 354 Or 132, 146-47, 309 P3d 1073 (2013) (the plaintiff "adequately *** serve[d] the essential purposes of the preservation rule" by "explain[ing] to the trial court that her argument was 'sort of leaning toward'" a specific legal

theory, which *was sufficient to* "fairly" apprise the parties of the argument and give them "an opportunity to respond to it"; that is "all that the rule of preservation requires").

We turn to the merits of defendant's claim, which concerns the lawfulness of Smithers's order to sit down in the police car after he handcuffed defendant.[3] The applicable statutory provision, ORS 162.247, provides:

"(1)   A person commits the crime of interfering with a peace officer * * * if the person, knowing that another person is a peace officer * * *:

"* * * * *

"(b)   Refuses to obey a lawful order by the peace officer * * *."

An order given under ORS 162.247(1)(b) is "lawful" if it is "authorized by, and is not contrary to, substantive law." *Kreis*, 365 Or at 667-68 (The question of whether an order is contrary to substantive law depends on "the authority granted, and the restrictions imposed[] by the substantive law."); *see also State v. Navickas*, 271 Or App 447, 450, 351 P3d 801, *rev den*, 358 Or 248 (2015) (explaining that "[t]he term lawful order in ORS 162.247(1)(b) does not create an opening for unequal or discretionary application" and "leaves nothing to the ad hoc judgment of an individual police officer[,]" judge, or jury (internal quotation marks omitted; citation omitted)).

Arguing, as she did below, that Smithers's order was unlawful under ORS 162.247 because he had no authority to order her to sit down, defendant asserts that there was no indication that Smithers had elevated officer-safety concerns that justified his request. Admitting that she was "belligerent" during the incident, defendant contends that ordering her to sit down in the patrol car on officer-safety grounds, after she was already handcuffed, was unreasonable under the circumstances. The state contends that Smithers's order was lawful because it followed a lawful detention. It asserts

---

[3] Because defendant did not challenge below the lawfulness of her handcuffing, we assume its lawfulness, but, under *Kreis*, we nonetheless determine independently whether Smithers's subsequent order to sit down was also justified. 365 Or at 668 n 16.

that Smithers's testimony and the footage from the incident established that defendant was hostile to a level that would reasonably raise a suspicion of a safety threat that would justify Smithers's conclusion that he should take active safety measures to protect himself from her. According to the state, defendant's undisputed belligerence—especially her references to "Waco"—would reasonably make Smithers fear that defendant might harm him or, at a minimum, defendant's words set the stage for Smithers to fear her as she approached him quickly.

Both parties' arguments are solely based on officer-safety concerns, which in turn focuses our review. Article I, section 9, of the Oregon Constitution affords a law enforcement officer authority to "take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987); *see also State v. Rudder*, 347 Or 14, 23, 217 P3d 1064 (2009) ("reasonableness *** is not [and should not be] biased in favor of the concerns of the police," which "does not and cannot [have] greater weight than the constitutional right of all persons *** to be free of unreasonable searches and seizures"). "[T]he question of whether the police reasonably could suspect that the person with whom they are interacting posed a threat of serious physical harm must be resolved by considering the totality of the circumstances" at the time of the action at issue. *State v. Madden*, 363 Or 703, 718, 427 P3d 157 (2018). Accordingly, as we review Smithers's order independently under *Kreis*, 365 Or at 668 n 16, we look at the totality of the circumstances to assess whether any safety concerns existed at the time that order was given, thus justifying Smithers's action. *Madden*, 363 Or at 718.

To prove that an officer's action is justified under officer-safety concerns, the state must meet the following two-part inquiry:

"First, the state bears the burden of establishing that: (1) based on specific and articulable facts known to the

officer, the officer (2) had subjective reasonable suspicion, that (3) the defendant posed an immediate threat, and (4) the threat was of serious physical injury. Second, the state must prove that (1) the officer's subjective safety concerns of an immediate threat of serious physical injury were objectively reasonable, and that (2) the officer's response to the safety concerns was, itself, objectively reasonable. To determine whether an officer's suspicion or the precautions that the officer took were reasonable, we look to the totality of the circumstances."

*State v. Phillips*, 312 Or App 239, 244, 491 P3d 99 (2021) (citations omitted).

In *Madden*, officer-safety concerns justified seizing a person who was sitting in a parked car outside a "drug house" where police had arrived to execute a warrant. 363 Or at 716. The three officers involved testified about their reasons for their actions toward the defendant. Despite having no particularized information about the defendant, the officers testified that they knew that the person sitting with the defendant in the car was involved with drug crimes, and the car's proximity to the house gave officers a reasonable belief that the two individuals had "some connection" to the house. *Id.* One of the officers saw the defendant reach back and shove a bag down between the seats as the officers approached. *Id.* at 715. Those facts, coupled with the officers' need to quickly secure the scene before entering the house where the number of occupants or weapons was unknown and the officers could reasonably expect individuals to behave violently or be under the influence of drugs, amounted to a legitimate officer-safety concern justifying the temporary detention of the defendant. *Id.* at 720-21. Nevertheless, once the officers had secured the house, continuing to detain the defendant in handcuffs was not justified based on a safety threat because those measures "could not have made the officers any safer from the perceived threat." *Id.* at 722.

Similarly, in *State v. Morgan*, we concluded that officer-safety concerns justified placing into custody and frisking a defendant whom the police reasonably believed to be armed with a gun and in the course of a possible kidnapping; nevertheless, once the suspect was detained and

"frisked, any concern about immediate danger dissipated, especially [considering the officer's] description of [the] defendant as polite and cooperative." 106 Or App 138, 142, 806 P2d 713, *rev den*, 312 Or 235 (1991) (internal quotation marks omitted).

Here, the state relies on *Madden*'s justified officer-safety measures to contend that defendant's situation is even more concerning, considering that the defendant in *Madden* did not threaten the detectives and did not invoke violent resistance as defendant did here. We note that the state's arguments on appeal go beyond what it offered at trial to establish that Smithers had a subjective belief that defendant's actions constituted a threat to his safety and had an objective basis for such a belief. Unlike in *Madden*, where the officers testified about the reasons for taking safety measures, here, as explained above, 324 Or App at 325, the state did not introduce testimony that explained whether Smithers felt threatened under the circumstances. Nor, upon defendant's challenge to his authority in her MJOA, did the state offer evidence to contend that Smithers's action was justified.

Moreover, even assuming that Smithers was justified in handcuffing defendant based on a suspicion that her quick approach posed a threat to him, as the state now contends, *Madden* does not assist the state in explaining why Smithers was justified on safety grounds in ordering defendant to sit down after she was already handcuffed. Indeed, the state fails to contend with *Madden*'s recognition that officer safety does not justify continuing measures when the police gain control of the circumstances that pose a safety threat. Though *Madden* does not support the resolution urged by the state, we nevertheless assess whether the evidence in the record supports a conclusion that defendant continued to pose a threat and to act with violent resistance even after Smithers handcuffed her.

Recognizing the dangers inherent in police work and the challenges inherent in officer-safety decisions, we cannot conclude that Smithers's order was justified if we conclude that any subjective suspicion concerning defendant was not objectively reasonable. *See Phillips*, 312 Or App at

244. Here, we conclude that any threat was mitigated once defendant was handcuffed. The record establishes that, although defendant was belligerent and, after being handcuffed, kicked Smithers in the shin, she did not present a threat of serious physical injury to Smithers or to Freeman, as required by *Bates* and *Rudder*.

We note that Smithers's testimony did not point to specific and articulable facts that would support an objectively reasonable fear of defendant. *Madden*, 363 Or at 713 ("[T]he officer must be able to point to specific and articulable facts *** that would reasonably create a fear for the safety of the officer or others[.]" (Quotation marks and citation omitted.)). Instead, Smithers simply testified to the accuracy of the video footage of the incident and confirmed some of the assertions made by defendant. He did not testify about defendant's reference to "Waco," a focus of the state's argument here, and as for defendant's action of kicking him in the shin (the only indication that she was physically aggressive), Smithers testified that her behavior offended him, but did not express concern for his safety. Article I, section 9, requires an officer to suspect a safety threat to justify measures to restrain a defendant, and the facts here support neither a concern about safety nor an objective basis for such a concern. *Bates*, 304 Or at 524.

Beyond the references to Waco and defendant's action in kicking Smithers, the record contains no other evidence that defendant could have posed a threat to the officers' safety. Despite defendant's belligerence, the record shows that Smithers had no reason to believe that she was armed given her tight clothes that could not have concealed a weapon and her assertion that she did not have a gun. Additionally, Smithers testified that he was aware that Freeman, who helped handcuff defendant, was present to ensure Smithers's safety, and defendant was handcuffed at the time of the orders to sit down.

It is understandable that Smithers might feel more comfortable with defendant sitting in the police car; officers commonly order citizens to do things for all sorts of reasons. The question here, though, is whether Smithers's order to defendant to sit down was a lawful order that makes her

failure to immediately obey punishable as IPO. The record contains no indication that Smithers's order was justified by Article I, section 9, officer-safety concerns. Because we conclude that the evidence does not support an inference that Smithers reasonably suspected that defendant posed a threat to him at the time that he ordered her to sit down, we need not assess whether his order was reasonable on that basis. Therefore, the state did not present sufficient evidence that Smithers's order was a lawful order for the purposes of ORS 162.247(1)(b), and it consequently failed to prove every element of IPO "beyond a reasonable doubt." The trial court thus erred in denying defendant's MJOA.

Count 1 reversed; remanded for resentencing; otherwise affirmed.